James W. COLESON, Appellant,

v.

Bernard J. BETHAN, Guardian of the Estate of Thomas Adam Bethan, an Incapacitated Person, and David Bouschor, Appellees.

No. 2–95–090–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 3, 1996.

James W. Coleson, Lake Dallas, pro se.

Stephen D. Stephens, Lewisville, David Bouschor, Denton, for appellees.

Before CAYCE, C.J., and LIVINGSTON and RICHARDS, JJ.

## OPINION

LIVINGSTON, Justice.

James W. Coleson, appellant, appeals the trial court order removing him as attorney ad litem for minor Thomas Adam Bethan. Appellee David Bouschor is the replacement ad litem and appellee Bernard J. Bethan is Thomas's guardian and father. Coleson asserts in two points of error that the trial court erred or abused its discretion in involuntarily removing him: 1) without any substantive grounds for the removal; and 2) sua sponte after ex parte communications by the guardian's attorney with the Court. We sustain Appellant's first and second points of error and reverse the trial court's order and remand for further proceedings consistent with this opinion.

## FACTS

Bethan and his wife, Patricia, were guardians of the estates of their minor children, Jennifer Eileen and Thomas Adam when the family lived in Michigan. The guardianships were established to manage the funds and investments of the children, "which require constant attention and management." In November 1991 the family moved to Texas.

After they moved, the Bethans applied to become guardians for their children in Texas in May 1991. Coleson was appointed attorney ad litem "to represent [the minors] in regard to said Application for the Appointment of a Guardian" on December 9, 1991 under section 646 of the Texas Probate Code. TEX. PROB. CODE ANN. § 646 (Vernon Supp. 1996) (formerly section 113A of the Texas Probate Code). Later, Jennifer's estate was distributed to her after she reached majority and the guardians were discharged as to her estate. Although both Bethan and his wife, Patricia, were originally appointed, Patricia subsequently resigned after an October 1994 hearing more fully described below. The guardians appear to have at all material times been represented by counsel.

The record shows there was conflict and tension between Coleson and the guardians from the beginning, although it is unclear how much of the conflict was actually between Coleson and the guardians' attorney. The guardians should have filed their bond and taken their oaths as required by the Probate Code within twenty days of their appointment in May 1992.[1] In October of 1992, Coleson filed a motion to have another guardian appointed because the Bethans had failed to timely qualify under the code, some eleven months after they had requested appointment. As a consequence, the court removed the Bethans on January 21, 1993, but reversed itself on January 29, 1993. The Bethans were reappointed upon a showing that they had filed their bond on January 22, 1993, in compliance with the court's previous May 8, 1992 order. While there may be no evidence of willful wrongdoing or fraud on the part of the guardians,[2] it is clear that inventories were consistently filed late, usually only after promptings from Coleson, and had to be amended to correct deficiencies found by both Coleson and the auditor. Additionally, funds were expended without prior court approval, and funds of the ward were used for the minor's support, in violation of section 777. See Tex. Prob. Code Ann. § 777 (Vernon Supp.1996).

Interestingly, the guardians filed a motion to remove Coleson as attorney ad litem on September 22, 1994, citing as cause the ad litem's actions of sending the ward and the court "letters stating that the Guardians are unsuitable and not acting diligently and utilized the assets of the estate as substitutins [sic] for their parental obligatins [sic] for care, maintenance, support and education...." The guardians stated that such actions caused stress in the household so that the ward no longer had confidence in the ad litem. Their removal motion was filed the same day the court held the hearing on reissuing the Bethans' guardianship letters, which had lapsed or expired because of some failure on the part of the guardians. The court signed an order temporarily reinstating the guardians on October 9, 1994, effective until October 31, 1994.

Another hearing was held on October 20, 1994 on the removal of the ad litem and on the ad litem's objections to the guardians' annual accounting for the calendar year 1993. The statement of facts from that hearing shows the trial court denied the motion to remove Coleson but encouraged the parties to work out their differences so that the estate would not continue to be burdened by ongoing legal fees. The court specifically found that it was in the best interest of the estate to retain the attorney ad litem. Further, the record is plain that Coleson committed no malfeasance as reflected by the court's findings. He was diligent in seeing to it that the guardians did what the law required of them. The minors' estate was charged with the legal fees of both the ad litem and the guardians. The 1993 annual accounting was filed, subject to future approval by the auditor and to several amendments to be made to the accounting. That accounting appears to have been finally approved and filed of record on January 4, 1995, although the proposed findings of fact filed by the guardian on March 10, 1995 state that the amended accounting "should be accepted and approved," which indicates the final accounting for 1993 still had not been filed. At the October hearing, Patricia resigned as a guardian. On January 21, 1995, Stephen Stephens, counsel for the remaining guardian, Bethan, sent a letter to Coleson stating he had sent Coleson a copy of the Order Approving Final Accounting for his review in October of 1994. Coleson replied to this letter on February 3, 1995.

---

1. At the time the guardianships were opened, requirements governing oaths and bonds of personal representatives were found in Chapter VII of the Texas Probate Code. See Act of April 4, 1955, 54th Leg., R.S., ch. 55, §§ 189, 191, 192, 1955 Tex. Gen. Laws 88, 146–47. The 1993 legislature re-wrote portions of the code, and guardianships are now covered in Chapter XIII of the code. See Act of June 19, 1993, 73rd Leg., R.S., ch. 957, § 1, 1993 Tex. Gen. Laws 4081, 4107. Under either version of the code, guardians are required to file their bonds within twenty days of the order making the appointment, and the guardian does not qualify to act until the oath is taken and the bond is approved.

2. Cash assets of the ward were not maintained in a guardianship account, but in a "personal" checking account of the guardians.

Coleson's February 3, 1995 letter is sharply worded and extremely critical of opposing counsel. In it Coleson asserts that Stephens's own timesheets to the court show he did not draft the order in question until November, and in fact the October correspondence from Stephens to Coleson concerned the order reinstating the guardians, not the order approving the accounting. Coleson also alleged that Stephens had ignored Coleson's timely objections to the January 4, 1995 order approving accounting and had caused the judge to sign a supplemental order approving accounting, all without notice to Coleson.[3] Coleson sent a copy of the February 3, 1995 letter to the trial court judge and to the ward.

Stephens's timesheet shows he reviewed Coleson's letter on February 6, 1995 and met with the guardian the next day about the letter. The following day he made a trip to the courthouse "to ask judge for in chambers meeting with ad litem. Telephone conference with client regarding judge's commits [sic]. Call to judge that client wanted new ad litem." Appellee's assertion in his brief that "[t]he record clearly indicates that guardian's counsel attempted to contact Appellant" is not supported by the transcript. The judge subsequently signed an order removing Coleson as attorney ad litem on February 8, 1995 without a hearing.

### THE FEBRUARY 8, 1995 ORDER REMOVING ATTORNEY AD LITEM

The order states that the action was taken sua sponte, after the judge had been advised of the facts and the law and had taken into consideration evidence "addressed at hearings, pleadings, and correspondence including recent correspondence dated February 3, 1995 received by the Court." The order further states:

Based on the foregoing, the Court finds the legitimate ends and purposes of the appointment of the present attorney ad

litem are no longer being served because of discord and conflicts between Attorney Ad Litem and Ward, Guardian, and Guardian's Counsel, alleged emotional trauma on Ward and Ward's family resulting from the apparently adverse relationship between Ward and Attorney Ad Litem and the express desire of the Ward to obtain the services of an alternate attorney ad litem in whom the Ward has confidence.

The Court further finds that a need for an attorney ad litem for the minor Ward continues but the present attorney ad litem is no longer able to function effectively in that capacity based on the above findings and evidence before the Court.

The court immediately removed Coleson and appointed Bouschor as substitute attorney ad litem. It is this order that is before us in this appeal.

### DISCUSSION

Coleson contends on appeal that the trial court erred substantively in removing him as attorney ad litem when there is no evidence of misconduct or neglect of his duties. He also argues that the court erred procedurally in removing him 1) without notice and a hearing and 2) after engaging in ex parte communications with the guardian's attorney. The appellee responds that the removal was properly based upon evidence produced at the October 20, 1994 hearing, pleadings, and correspondence in the case, and the ward's expressed desire for a new attorney ad litem. Appellee also points out that there can be no procedural violations, such as failure to give notice and hearing, where the law provides no "procedure" to be followed in removing an attorney ad litem.

### TYPES OF AD LITEMS

 This is an area of jurisprudence where the law is largely silent. Under the rules of civil procedure, such as when a minor is a party to a suit, a guardian ad litem

---

3. That supplemental order approving accounting does not appear in the transcript or in the docket sheet. This illustrates another problem with this case. The probate docket sheets are incomplete. Not all orders in the transcript were entered in the docket. Motions were noted as filed, but no ruling notation appears. The January 4, 1995 annual accounting is not recorded in the docket either. Additionally, not all papers in the transcript bear a file date. *See* TEX. PROB. CODE ANN. §§ 621–631 (Vernon Supp.1996).

may be appointed to represent the interests of the minor where the parents or next friend of the minor may have interests adverse to those of the minor. TEX. R. CIV. P. 44 & 173; *Texas Employers Ins. Corp. v. Keenom,* 716 S.W.2d 59, 67 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The decision to appoint or to replace a guardian ad litem is within the discretion of the trial court, and that decision should be based upon the best interests of the minor, not the interests of the next friend or attorney. *Urbish v. 127th Judicial Dist. Court,* 708 S.W.2d 429, 431–32 (Tex.1986) (orig.proceeding). A guardian ad litem participates as the personal representative of a minor, not as an attorney for the minor. *Byrd v. Woodruff,* 891 S.W.2d 689, 706 (Tex.App.—Dallas 1994, writ denied). Once the conflict of interest has ended, so has the need for the guardian ad litem. At that point, the guardian ad litem should be removed from the case. *Brownsville–Valley Regional Medical Ctr., Inc. v. Gamez,* 894 S.W.2d 753, 755 (Tex.1995).

The term "ad litem" means "for the suit." BLACK'S LAW DICTIONARY 43 (6th ed.1990). The representation of an ad litem is limited to matters related to the suit for which he or she is appointed. *Durham v. Barrow,* 600 S.W.2d 756, 761 (Tex.1980). *Id.* at 756.

## AD LITEMS IN PROBATE MATTERS

The Probate Code allows for two different types of "ad litems" to be appointed. In Chapter XIII of the Probate Code, "attorney ad litem" is defined as "an attorney who is appointed by a court to represent *and advocate* on behalf of a *proposed* ward, an *incapacitated person,* or an unborn person in a guardianship proceeding." TEX. PROB. CODE ANN. § 601(1) (Vernon Supp.1996) (emphasis added). Once a guardian has been appointed, there is no longer a "proposed ward," but a "ward," implying that the relationship should end once the "proposed ward" has become a "ward." *Id.* § 601(27), (31); *see also id.* § 646(a) (attorney ad litem is to represent the interests of the proposed ward); *id.* § 647(a) (attorney ad litem is to represent a proposed ward and discuss with the proposed ward the law and facts of the case, the proposed ward's legal options and the grounds on which guardianship is sought).

The Probate Code also allows for appointment of guardian ad litems. The code defines a "guardian ad litem" as one who is to "represent the best interests of an incapacitated person in a guardianship proceeding." TEX. PROB. CODE ANN. § 601(11) (Vernon Supp.1996). Under section 645(a) a guardian ad litem is "to represent the interests of an incapacitated person in a guardianship proceeding," and under section 645(c), the guardian ad litem is "an officer of the court." *Id.* § 645(a), (b).

■ Obviously, a minor is by definition an "incapacitated person" for whom an attorney ad litem may also be appointed, but there is no indication that the appointment of an attorney ad litem should continue indefinitely unless some special circumstances require it. *Id.* § 601(1), (13). Further, section 646 of the Texas Probate Code states that an attorney ad litem should be appointed in a proceeding for the appointment of a guardian. *Id.* § 646(a). The State Bar Rules comments point out that while a lawyer should carry out his duties until they are concluded, if the attorney's representation was limited to a specific matter, "the relationship terminates when the matter has been resolved." TEX. DISCIPLINARY R. PROF. CONDUCT 1.02 & cmt. 6 (1990), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp. 1996) (STATE BAR RULES art. X, § 9) (located following section 83.006 of the TEX. GOV'T CODE).

This guardianship was begun before the enactment of sections 601 and 646. The enacting legislation states, however, that "[A] guardianship existing on September 1, 1993, must be modified to conform to the changes in law made by this Act." Act of June 19, 1993, 73rd Leg., R.S., ch. 957, § 76(c), 1993 Tex. Gen. Laws 4081, 4182. Moreover, the language of former Probate Code section 113A covering the appointment of an attorney ad litem states the attorney shall be appointed "to represent the interests of the person *for whom the permanent guardianship is sought.*" Act of June 15, 1977, 65th

Leg., R.S., ch. 551, § 1, 1977 Tex. Gen. Laws 1380, 1380, *amended by* Act of June 18, 1989, 71st Leg., R.S., ch. 1261, § 1, 1989 Tex. Gen. Laws 5082, 5082, *repealed by* Act of June 19, 1993, 73rd Leg., R.S., ch. 957, § 75(2), 1993 Tex. Gen. Laws 4182, 4182 (emphasis added). The current language in the code is substantially the same as the law in effect when Coleson was appointed. The code makes no mention of the duties or obligations of an attorney ad litem once a guardian has been appointed and the "proposed· ward" has become a "ward." It does, however, also allow for the appointment of an ad litem to represent and advocate on behalf of an incapacitated person, which would include a minor ward.

### APPLICATION OF LAW TO FACTS

In the case before us, Coleson was clearly the attorney ad litem for the purposed guardianship application under the terms of his appointment. We believe his appointment continued at least until the guardians finally qualified in January 1993 when they filed their bond. Up until that point, Coleson was still the legal representative of the proposed ward under the code. His actions in seeking new guardians for the proposed wards, when the parents failed to qualify within the statutory time limits, were appropriate. But once the guardians qualified, the attorney ad litem should have had no further statutory duties and he should have been discharged. The attorney ad litem, the attorney for the guardian, or the court should have moved to discharge him then. Further, when an attorney ad litem continues representation after the guardian's qualification, it places the ad litem in a very tenuous position. Obviously, if the ad litem discovered that something was askew regarding the guardianship, it should be disclosed to the court. The better practice is to immediately seek to be discharged.

Coleson's subsequent actions in objecting to the annual accounting (June 20, 1994) and in seeking the appointment of new guardians (in 1992) were done for the purpose of protecting the wards and pressuring the guardians to comply with the Probate Code and were Coleson's legal and professional responsibilities because he was still the attorney ad litem of record, and the guardian failed to file to remove until twenty months after they finally qualified.

At that hearing, the trial court specifically found "that it was in the best interest of the Estate to retain James Coleson as Attorney Ad Litem." Additionally, there is no order discharging him until February 8, 1995. Thus, from the time he was appointed in December 1991 (reconfirmed at the October 20, 1994 hearing) until February 8, 1995, he was the attorney ad litem and attorney of record for the ward.

### PROCEDURES FOR REMOVAL OF ATTORNEY AD LITEM

■ Coleson argues on appeal that he cannot be removed as attorney ad litem unless the trial court follows the same procedure as would be used by the court to disqualify a party's retained counsel. However, the relationship between a proposed ward and the attorney ad litem is not the same as the ordinary relationship between client and attorney. State Bar Disciplinary Rule 1.02 defines the scope and objectives of a lawyer's representation of his client. TEX. DISCIPLINARY R. PROF. CONDUCT 1.02 (1990). The first principle is that a lawyer shall abide by a client's wishes, subject to certain specific exceptions. *Id.* As the comments to the rule point out, the rule

assumes that the lawyer is legally authorized to represent the client. The usual attorney-client relationship is established and maintained by consenting adults who possess the legal capacity to agree to the relationship. Sometimes the relationship can be established *only by a legally effective appointment of the lawyer to represent a person.* Unless the lawyer is legally authorized to act for a person under a disability, an attorney-client relationship does not exist for the purpose of this rule.

*Id.* cmt. 12 (emphasis added). The comments also point out that if the client has a legal representative, other counselors should look to the representative for decisions on behalf of the client. *Id.* cmt. 13. Thus, Coleson represented the wards and an attorney-client relationship existed between him

and the wards. The difference between this attorney-client relationship and others is that it is initially mandated by statute and the "client" does not select the attorney; the court does.

Where the Probate Code is silent, the Texas Rules of Civil Procedure govern the procedures to be followed in county courts. TEX. R. CIV. P. 2. There are two ways that an attorney ad litem can be removed. Under the Texas Rules of Civil Procedure Rule 12, any party may file a sworn motion challenging the attorney's authority to act on behalf of the client. TEX. R. CIV. P. 12. Ten days' notice to the "challenged" attorney must be given before the hearing date. *See discussion in* Sharon B. Garner & Linda C. Goehrs, *Guardianship Update Including 1995 Legislation*, in 1 19TH ANNUAL ADVANCED ESTATE PLANNING and PROBATE COURSE (State Bar of Texas Professional Development Program 1995). This type of challenge would be appropriate where perhaps the attorney ad litem's duties had been fulfilled but the attorney ad litem continued to act and failed to seek his or her discharge, as would be the normal scenario. As in this case, when neither the ad litem nor the court moved to discharge the ad litem, counsel for the guardians could have used this procedure sometime after their qualification. It could also arise if someone questioned the "capacity" of a client to hire an attorney to defend a guardianship proceeding.

Another alternative that would be appropriate where a trial court specifically continued the appointment, would be for the court, on its own motion, or on that of opposing counsel, to seek removal of the ad litem by motion and request a temporary restraining order under rule 680. TEX. R. CIV. P. 680. Obviously, under rule 21a, any parties or their counsel are entitled to notice and a hearing. TEX. R. CIV. P. 21a. Further, if a temporary restraining order is granted without notice, it expires within fourteen days and should be immediately set for hearing at the earliest possible date. "Every restraining order shall include an order setting a certain date for hearing on the temporary or permanent injunction sought." TEX. R. CIV. P. 680.

In the prior hearing to remove Coleson, he was given notice of the time and date of the hearing and participated in the hearing. In accordance with the Texas Rules of Civil Procedure, he should have been given notice of the next hearing regardless of whether such removal was based on the court's own motion or on opposing counsel's motion.

The March 24, 1995 Finding of Fact 12 states that the Probate Court's October 20, 1994 Order continuing Coleson's appointment as attorney ad litem was an interlocutory and non-final order. This finding is incorrect since such an order is a final, appealable order in a probate matter. *Youngs v. Choice*, 868 S.W.2d 850, 852 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *Christensen v. Harkins*, 740 S.W.2d 69, 71–72 (Tex.App.—Fort Worth 1987, no writ); *Taliaferro v. Texas Commerce Bank*, 660 S.W.2d 151, 153 (Tex.App.—Fort Worth 1983, no writ); *Spies v. Milner*, 928 S.W.2d 317 (Tex.App.—Fort Worth 1996, n.w.h.); *cf. Forlano v. Joyner*, 906 S.W.2d 118, 119–20 (Tex.App.—Houston [1st Dist.] 1995, no writ). Therefore, the February 8, 1995 "removal" of Coleson was not a "continuation" of any prior hearing and required new notice. The only way to create such a record and support a removal is to hold a hearing. We therefore hold that the probate court was entitled to temporarily remove the attorney ad litem sua sponte, but should have done so with notice and a subsequent hearing. Coleson's second point of error is sustained.

## SUBSTANTIVE GROUNDS FOR REMOVAL

█ Once the court appoints an attorney ad litem, that attorney becomes the legal representative for the ward and an attorney-client relationship is established, albeit created via the court's statutory authority rather than by a normal contract for services between two parties. "A minor does not have the legal capacity to employ an attorney or anyone else to watch over her interests." *Byrd*, 891 S.W.2d at 704. It is this limitation, coupled with the probate court's statutory authority, that creates the relationship. TEX. PROB. CODE ANN. §§ 646(a), 647(a); *see*

*also* TEX. R. CIV. P. 244. As such, an attorney ad litem performs similar services as any attorney such as giving advice, doing research, and conducting litigation, but for a minor child rather than for an adult. *duPont v. Southern Nat'l Bank of Houston,* 771 F.2d 874, 882 (5th Cir.1985), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986); *see also Executors of Tartt's Estate v. Harpold,* 531 S.W.2d 696, 698 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). "The attorney ad litem owes the same duty to his client as the attorneys representing the executors owe to their clients." *Tartt's Estate,* 531 S.W.2d at 698. Allowing unbridled discretion to remove such an attorney once the court has previously determined there is a need for one would be counterproductive. But, since the probate court is charged with the duty to protect the interests of its ward in the context of such representation, its hands cannot be tied if it, or some opposing party, perceives a true need for the removal of an attorney ad litem.

Analogous situations arise when courts appoint attorneys ad litem to represent those adjudged to be mentally ill and those accused of crimes who are indigent. TEX. PROB. CODE ANN. § 34A (Vernon Supp.1996); TEX. CODE CRIM. PROC. ANN. art. 26.04(a) (Vernon 1989). In criminal matters, once the relationship is created, whether the attorney is retained or appointed, the relationship is established and it should be protected by law. *See Buntion v. Harmon,* 827 S.W.2d 945, 949 (Tex.Crim.App.1992) (orig.proceeding). With limited exceptions, a trial court may not remove such an attorney, over the objections of both the accused and counsel, in the absence of a showing of actual or potential conflict. *See Stearnes v. Clinton,* 780 S.W.2d 216, 222–23 (Tex.Crim.App.1989) (orig.proceeding). "Furthermore, the record must reveal some principled reason to justify a trial judge's sua sponte replacement of trial counsel." *Hercules v. Harmon,* 864 S.W.2d 752, 754 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding) (emphasis omitted); *see also Stotts v. Wisser,* 894 S.W.2d 366, 368 (Tex.Crim. App.1995) (orig.proceeding).

■ While the trial court found that the attorney ad litem was no longer functioning in his appointed capacity because of discord and conflict with others, it was apparently based upon ex parte communications with opposing counsel and previous problems raised at prior hearings. Such a finding may be sufficient to allow the court to remove, but it must be based upon evidence properly before the court. We agree with Coleson that because he was supposed to continue acting as attorney ad litem for the ward, it would be his job to inform the court if the guardian was failing to properly carry out the court's orders and his statutory duties. The guardian objected to Coleson's allegations that the guardians had not timely filed an accounting, were spending the ward's money on things the parents were supposed to pay for, and that the accountings were incorrect. However, the record shows these allegations are true. Even though ill feeling between a ward and an ad litem may be sufficient grounds for a ward to ask for a new ad litem, as this ward who was over fourteen years of age was said to have requested, there is insufficient evidence in the record to support any of these findings.

In this case, the guardian and the trial court expressed concern over the amounts being assessed against the ward's estate, and that was one basis urged for removing Coleson. However, the majority of legal fees paid by the ward's estate were a direct result of the guardian or his counsel's failure to properly or timely carry out the duties imposed by the law. The code expressly holds the guardian and the bond sureties liable for costs incurred when the guardian neglects a required duty, including costs that are not authorized expenditures and attorney fees incurred in removing the guardian or in causing the guardian to comply with the neglected duties. TEX. PROB. CODE ANN. § 668 (Vernon Supp.1996). There is nothing in the record to explain why section 668 was not used. In the interim, it is the court's continuing duty to oversee the guardian's handling of the estate. TEX. PROB. CODE ANN. § 671 (Vernon Supp.1996).

■ We hold, in the absence of statutory guidance, the attorney ad litem appointed by the trial court may be removed by the trial court once proper procedures are fol-

lowed and a sufficient record showing some principled reason to justify the removal or replacement exists. Such actions by the trial court should be reviewed under the abuse of discretion standard because the ultimate responsibility for the protection of the ward lies with the court. TEX. PROB. CODE ANN. § 671 (Vernon Supp.1996); *see, e.g., Urbish,* 708 S.W.2d at 432. Coleson's first point of error is sustained.

Appellant Coleson's first and second points of error are sustained, and the order of the trial court replacing Coleson as attorney ad litem is reversed and remanded for further proceedings in accordance with this opinion.