COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-373-CV
 
IN RE
FORT WORTH CHILDREN'S HOSPITAL       
           
           
           
           
        RELATOR
D/B/A COOK CHILDREN'S MEDICAL CENTER
 
------------
ORIGINAL PROCEEDING
------------
OPINION
------------
I. Introduction
This original proceeding involves a
discovery dispute. Relator Fort Worth Children's Hospital d/b/a Cook Children's
Medical Center (Cooks) seeks mandamus relief from the trial court's October 18,
2002 order requiring it to produce (a) the names and "face sheets" of
all infants who received the vitamin supplement E-Ferol while patients at Cooks
in 1984 and (b) the names of those patients' parents.
II. Background
The underlying case in this original
proceeding is a health care liability suit arising out of the care and treatment
of four premature infants who were patients at Cooks between January and April
of 1984 and who received E-Ferol. E-Ferol is a high potency intravenous vitamin
E solution that the FDA recalled in April 1984. The real parties in interest
sued Cooks because its pharmacy dispensed the E-Ferol to the infants based on
prescriptions written by the children's physicians. E-Ferol was administered to
patients at Cooks for a limited time only, i.e., January through April of 1984.
In several discovery requests, the real
parties in interest have asked Cooks to reveal the names and addresses of all
patients who were administered E-Ferol while at Cooks. Cooks objected to these
requests on the basis that this information is protected by the
physician-patient privilege. The real parties in interest filed a motion to
compel Cooks to give them this information, and the trial court held numerous
hearings on the motion. One of the trial court's concerns during the hearings
was that it appeared the nonparty patients and their parents had not been
informed that the children had received E-Ferol while at Cooks.
On October 18, 2002, the trial court
signed an order requiring Cooks to produce the names and "face sheets"(1)
of all patients who received E-Ferol while at Cooks in 1984; however,
the order does not require Cooks to produce this information to the real parties
in interest, but to Art Brender, the guardian ad litem who had previously been
appointed for two of the real parties in interest who were represented by their
parents as next friend. In its order, the court authorized Brender to contact
the nonparty patients and their parents and inform them that the patients
received E-Ferol while at Cooks. The court's order specifically requires Brender
not to reveal the information about the nonparty patients to any persons other
than the patients, their parents, and any other court-appointed guardian without
a further court order. The trial court's order states that it is "[o]f
concern to this Court that some child may be suffering consequences of E-Ferol
toxicity and may not know it" and that the court "believes the
patients and their parents have a right to be informed of the administration of
the drug."
After Cooks filed this original
proceeding, Brender filed an emergency motion to appoint him guardian ad litem
of the nonparty patients. The court granted this motion on the basis that
Brender had been acting in this capacity for several years. The court stated in
its order that the nonparty patients were minors when the case began and that
they may currently be incompetent.
III. Mandamus Standard of
Review
In deciding whether a writ of mandamus is
appropriate, we recognize that mandamus will issue only to correct a clear abuse
of discretion or the violation of a duty imposed by law when there is no other
adequate remedy at law. In re Daisy Mfg. Co., 17 S.W.3d 654, 658 (Tex.
2000) (orig. proceeding). A trial court clearly abuses its discretion when it
reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992) (orig. proceeding).
With respect to the resolution of factual
issues or matters committed to the trial court's discretion, we may not
substitute our judgment for that of the trial court unless the relator
establishes that the trial court could reasonably have reached only one decision
and that the trial court's decision is arbitrary and unreasonable. Id.
at 839-40. This burden is a heavy one. Canadian Helicopters, Ltd. v. Wittig,
876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding).
Our review is much less deferential with
respect to a trial court's determination of the legal principles controlling its
ruling because a trial court has no discretion in determining what the law is or
in applying the law to the facts. Walker, 827 S.W.2d at 840. Thus, a
clear failure by the trial court to analyze or apply the law correctly will
constitute an abuse of discretion and may result in mandamus. Id.
Mandamus will issue to correct a discovery
order if the order constitutes a clear abuse of discretion and there is no
adequate remedy by appeal. In re Colonial Pipeline Co., 968 S.W.2d 938,
941 (Tex. 1998) (orig. proceeding). In making the determination of whether the
trial court abused its discretion, we are mindful that the purpose of discovery
is to seek the truth so that disputes may be decided by what the facts reveal,
not by what facts are concealed. Id. The rules governing discovery do
not require as a prerequisite to discovery that the information sought be
admissible evidence; it is enough that the information appears reasonably
calculated to lead to the discovery of admissible evidence. See Tex. R.
Civ. P. 192.3(a). However, this broad grant is limited by the legitimate
interests of the opposing party to avoid overly broad requests, harassment, or
disclosure of privileged information. In re Am. Optical Corp., 988
S.W.2d 711, 713 (Tex. 1998) (orig. proceeding).
Appellate courts will not intervene to
control incidental trial court rulings when an adequate remedy by appeal exists.
Walker, 827 S.W.2d at 840. An appellate remedy is not inadequate merely
because it might involve more expense or delay than obtaining a writ of
mandamus. In re Ford Motor Co., 988 S.W.2d 714, 722-23 (Tex. 1998)
(orig. proceeding); Walker, 827 S.W.2d at 842. A party will not have an
adequate remedy by appeal: (1) when the appellate court would not be able to
cure the trial court's discovery error; (2) where the party's ability to present
a viable claim or defense at trial is vitiated or severely compromised by the
trial court's discovery error; and (3) where the trial court disallows discovery
and the missing discovery cannot be made a part of the appellate record or the
trial court, after proper request, refuses to make it part of the record. Ford,
988 S.W.2d at 721; Walker, 827 S.W.2d at 843.
IV. Analysis
Cooks contends the trial court abused its
discretion in ordering Cooks to produce the names and face sheets of the
nonparty patients because: the face sheets are subject to the physician-patient
privilege and, thus, are protected from disclosure; the trial court abused its
discretion in appointing a guardian ad litem for the nonparty patients for the
purpose contemplated in the October 18, 2002 order; the trial court's findings
in the October 18, 2002 order do not support its conclusion; and the information
in the face sheets is not relevant to the underlying lawsuit, and even if it is,
the trial court did not properly balance the need for the information against
the nonparty patients' privacy rights.(2)
Physician-Patient Privilege
Cooks argues that the production of
nonparty patient names and other identifying information violates the
physician-patient privilege provided for in rule 509 of the Texas Rules of
Evidence and section 159.002 of the Texas Occupations Code, which Cooks contends
was extended to hospitals in section 241.152 of the Texas Health and Safety
Code. Tex. Health & Safety Code Ann. § 241.152 (Vernon 2001); Tex. Occ.
Code Ann. § 159.002 (Vernon 2003); Tex. R. Evid. 509.
Generally, privileged matters are not
discoverable. In re Anderson, 973 S.W.2d 410, 411 (Tex. App.--Eastland
1998, orig. proceeding). A discovery order is improper if it compromises a
person's right to possible claims of privilege or mandates the disclosure of
privileged information that exceeds the scope of discovery. In re Dolezal,
970 S.W.2d 650, 651 (Tex. App.--Corpus Christi 1998, orig. proceeding) (citing Axelson,
Inc. v. McIlhany, 798 S.W.2d 550, 553 (Tex. 1990) and Mutter v. Wood,
744 S.W.2d 600, 601 (Tex. 1988)). Mandamus is the appropriate remedy when the
trial court has erroneously granted discovery of privileged documents. In re
Anderson, 973 S.W.2d at 411. Remedy by appeal in that case is ineffective
because, once revealed, the documents cannot be protected. In re Dolezal,
970 S.W.2d at 651. The party claiming privilege has the burden to establish the
privilege. See Tex. R. Civ. P. 193.4(a); Jordan v. Court of Appeals,
701 S.W.2d 644, 648-49 (Tex. 1985) (orig. proceeding).
Section 241.152 of the health and safety
code provides that a hospital or its agents or employees may not disclose health
care information about a patient to any person other than the patient or the
patient's legally authorized representative without written consent. Tex. Health
& Safety Code Ann. § 241.152. "Health care information" is
defined as "information recorded in any form or medium that identifies a
patient and relates to the history, diagnosis, treatment, or prognosis of a
patient." Id. § 241.151(2). Contrary to Cooks's assertions,
section 241.152 does not make "health care information" privileged; it
merely imposes liability on a hospital for disclosing health care information in
violation of the statute by creating a statutory remedy for injunctive relief
and damages. Compare id. § 241.152(a) (stating that "[e]xcept as
authorized by Section 241.153, a hospital or an agent or employee of a hospital
may not disclose health care information about a patient to any person other
than the patient or the patient's legally authorized representative without the
written authorization of the patient or the patient's legally authorized
representative") with Tex. Occ. Code Ann. § 160.007(a) (providing
that "[e]xcept as otherwise provided by this subtitle, each proceeding or
record of a medical peer review committee is confidential, and any communication
made to a medical peer review committee is privileged) (emphasis added)
and Tex. Health & Safety Code Ann. § 161.032(a) (stating that
"[t]he records and proceedings of a medical committee are confidential and
are not subject to court subpoena"); but see In re Columbia Valley
Reg'l Med. Ctr., 41 S.W.3d 797, 799 (Tex. App.--Corpus Christi 2001, orig.
proceeding) (stating that "the Texas Health and Safety Code provides that
all health care information found in hospital records is privileged and cannot
be disclosed without authorization" and citing no authority other than
health and safety code section 241.151(2)). However, section 241.153(19)
provides an exception for documents that are disclosed subject to a trial court
order. Thus, section 241.153(19) shields a hospital from liability to a patient
for disclosing health care information pursuant to a court order.(3)
Tex. Health & Safety Code
Ann. § 241.153(19).
Because the face sheets are not privileged
under section 241.152, we must determine whether they are privileged under any
other statute or rule. Rule of evidence 509(c)(2) provides that "[r]ecords
of the identity, diagnosis, evaluation, or treatment of a patient by a
physician, created or maintained by a physician, are confidential and
privileged and may not be disclosed." Tex. R. Evid. 509(c)(2) (emphasis
added). Section 159.002 of the occupations code essentially mirrors this
language and provides further that any person receiving confidential
communications other than a person acting on the patient's behalf may not
disclose the information except in a manner consistent with the purposes for
which it was given. Tex. Occ. Code Ann. § 159.002(b), (c). A confidential
communication is "[a] communication between a physician and a patient,
relative to or in connection with any professional services as a physician to
the patient." Id. § 159.002(a) (emphasis added). Section
151.002(a)(12) defines a physician as "a person licensed to practice
medicine in this state." Id. § 151.002(a)(12). Rule 509 defines a
physician as "a person licensed to practice medicine in any state or
nation, or reasonably believed by the patient so to be." Tex. R. Evid.
509(a)(2). Cooks does not argue that it fits either definition of physician.
We find no evidence in the record showing
who created or maintained the face sheets. While they are labeled
"Admitting Form, Fort Worth Children's Hospital," there is also a
space at the bottom for the treating physician's signature. However, the record
contains no proof that the face sheets are completed and maintained by
physicians rather than hospital employees.(4)
Because Cooks did not present any evidence that the face sheets are records
created or maintained by a physician, it failed to carry its burden to prove
that the documents are subject to the physician-patient privilege under either
rule 509 or section 159.002.(5) In addition, the
physician-patient privilege may only be asserted by the patient, the patient's
representative, or the physician on behalf of the patient. Tex. Occ. Code Ann.
§ 159.002(e); Tex. R. Evid. 509(d). Therefore, Cooks has no standing to assert
the privilege on behalf of the nonparty patients.
Accordingly, we hold that Cooks has not
shown that the information in the face sheets is subject to any privilege that
it could assert.
Relevance to Underlying Suit
Cooks also challenges the trial court's
order on the basis that the information it is required to turn over is not
relevant to a party's medical or mental condition in the underlying lawsuit,(6)
and even if it is, the court did not properly balance the nonparty patients'
right to privacy against the need for the information. Cooks's arguments
regarding relevancy are based on the assumption that the information is
privileged. Because we hold that Cooks has not proven that the information is
privileged, it is discoverable if it is relevant to any issue in the underlying
lawsuit, not just a party's physical, mental, or emotional condition.
Information is relevant for discovery
purposes if it is relevant to the subject matter of the pending action, claim,
or defense and is "reasonably calculated to lead to the discovery of
admissible evidence." Tex. R. Civ. P. 192.3(a); In re Am. Home
Assurance Co., 88 S.W.3d 370, 373 (Tex. App.--Texarkana 2002, orig.
proceeding). Two of the claims of the real parties in interest are that Cooks
fraudulently concealed the fact that its pharmacy administered E-Ferol to
infants and that E-Ferol was recalled by the FDA and that Cooks breached a duty
to notify them of the recall. Accordingly, whether or not Cooks told the
nonparty patients about the E-Ferol appears to be relevant to the claims of the
real parties in interest for discovery purposes. See Tex. R. Civ. P.
192.3(a).
Cooks additionally contends that the court
failed to properly balance the nonparty patients' right to privacy against the
need for disclosure of the information. In its discussion of this issue, Cooks
asserts that a patient's medical records are within a constitutionally protected
"zone of privacy." See James v. Kloos, 75 S.W.3d 153, 157
(Tex. App.--Fort Worth 2002, no pet.). But Cooks does not contend that the trial
court's order does not "so restrict[] the discovery of the [nonparty
patients'] identities as to preclude any risk of disclosure of [their]
identities . . . to third persons." Tarrant County Hosp. Dist.
v. Hughes, 734 S.W.2d 675, 685 (Tex. App.--Fort Worth 1987, original
proceeding) (op. on reh'g) (emphasis added). While the trial court's order does
require Cooks to turn this information over to Art Brender, it also requires
Brender to keep the information confidential. Thus, we hold that Cooks has not
shown that the trial court's order violates the nonparty patients' right to
privacy. We further hold that the face sheets are discoverable under these
facts.
Appointment of Guardian Ad Litem
Cooks further argues that the trial court
had no authority to appoint a guardian ad litem for the nonparty patients;
therefore, requiring Cooks to produce the names and addresses of the nonparty
patients to Brender for the purposes set forth in the order is an abuse of
discretion. Cooks contends that there is no provision in Texas law providing for
the appointment of a guardian ad litem in this situation.
We review the appointment of a guardian ad
litem under an abuse of discretion standard. McGough v. First Court of
Appeals, 842 S.W.2d 637, 640 (Tex. 1992) (orig. proceeding) (op. on reh'g).
To determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in
other words, whether the act was arbitrary or unreasonable. See Garcia v.
Martinez, 988 S.W.2d 219, 222 (Tex. 1999); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986). Merely because a trial court may decide a matter within
its discretion in a different manner than an appellate court would in a similar
circumstance does not demonstrate that an abuse of discretion has occurred. Downer,
701 S.W.2d at 241-42. A trial court's erroneous legal conclusion, even in an
unsettled area of law, is an abuse of discretion. Huie v. DeShazo, 922
S.W.2d 920, 927-28 (Tex. 1996) (orig. proceeding).
The literal meaning of "ad litem"
is "for the suit." Black's Law Dictionary 43 (7th ed.
1999). A guardian ad litem is a personal representative of an individual subject
to a disability who is appointed to protect the interests of the disabled person
in any lawsuit in which that person is a party. Pleasant Hills Children's
Home of the Assembly of God, Inc. v. Nida, 596 S.W.2d 947, 951 (Tex. Civ.
App.--Fort Worth 1980, no writ). A guardian ad litem is recognized only for
specific purposes, id., and his powers are limited to matters connected
with the suit in which the guardian has been appointed, Durham v. Barrow,
600 S.W.2d 756, 761 (Tex. 1980). The decision to appoint a guardian ad litem is
within the discretion of the trial court. Coleson v. Bethan, 931 S.W.2d
706, 710 (Tex. App.--Fort Worth 1996, no writ).
In its December 10, 2002 order, the trial
court appointed Brender as the nonparty patients' guardian ad litem on the basis
that the nonparty patients were, at the beginning of the discovery dispute,
minors and that even if the patients are not now minors, they may be
incompetent.(7) Texas Rule of Civil Procedure 173
provides for the appointment of a guardian ad litem for a minor or incompetent
person in the following situations: (a) the minor or incompetent may be a defendant
to a suit and has no guardian in this state; or (b) the minor or incompetent is
a party to a suit and is represented by a next friend or a guardian who
appears to the court to have an interest adverse to the minor or incompetent.
Tex. R. Civ. P. 173 (emphasis added). A trial court abuses its discretion if it
appoints a guardian ad litem under subsection (b) in the absence of a conflict
or if the trial court does not discharge the guardian ad litem when the conflict
has ended. See, e.g., Brownsville-Valley Reg'l Med. Ctr., Inc. v. Gamez,
894 S.W.2d 753, 755 (Tex. 1995); McAllen Med. Ctr. v. Rivera, 89 S.W.3d
90, 95 (Tex. App.--Corpus Christi 2002, no pet.).
In this case, the patients are neither
parties to the suit nor potential defendants. In addition, they are no longer
minors(8) and there is no evidence that any of
them is incompetent. Further, we find no other provision in Texas law
authorizing the appointment of a guardian ad litem for the nonparty patients in
this case. Therefore, we hold that the trial court abused its discretion in
appointing Brender guardian ad litem of the nonparty patients for the purpose
set forth in the October 18, 2002 order.
V. Conclusion
Because we hold that the trial court
abused its discretion in appointing a guardian ad litem to receive the nonparty
information, we conditionally grant the writ of mandamus and order the trial
court to vacate its October 18, 2002 and December 10, 2002 orders.(9)
A writ of mandamus will issue only if the trial court fails to comply with these
instructions.
 
                                                                       
TERRIE LIVINGSTON
                                                                       
JUSTICE
 
PANEL A: DAY, LIVINGSTON, and DAUPHINOT,
JJ.
 
[DELIVERED FEBRUARY 28, 2003]

1. The face sheets appear to be the admitting paperwork
for the patients and include information such as the name and address of the
patient and his or her parents. They also include social security numbers and
employment information.
2. We note that the propriety of the trial court's
appointment of the guardian ad litem is potentially dispositive of whether the
trial court's October 18, 2002 order was an abuse of discretion. However, we
will first address the privilege and relevancy issues because of the likelihood
of these issues repeating in this case. Compare Tex. R. App. P. 47.1
(directing court of appeals to hand down an opinion that is as brief as
practicable, but addresses every issue raised and necessary to final disposition
of appeal) with Tex. R. App. P. 2 (providing that court may for good
cause suspend a rule's operation in a particular case).
3. We also note that, although not argued by real parties
in interest, another exception to section 241.152's prohibition on disclosure is
"directory information," which is defined as "information
disclosing the presence of a person who is receiving inpatient, outpatient, or
emergency services from a licensed hospital, the nature of the person's injury,
the person's municipality of residence, sex, and age, and the general health
status of the person as described in terms of 'critical,' 'poor,' 'fair,' 'good,''excellent,'
or similar terms." Tex. Health & Safety Code Ann. § 241.151(1).
4. Cooks has maintained throughout discovery that the
physicians who prescribed the E-Ferol were not employees of Cooks, but
independent contractors.
5. Cooks does not argue that the process of identifying
the patients as having received E-Ferol is privileged (i.e., that they had to
rely on physician-created or maintained medical records to determine which
patients received E-Ferol).
6. Information that is relevant to a patient's physical,
mental, or emotional condition is excepted from the physician-patient privilege
in any proceeding in which a party relies on the condition as part of its claim
or defense. Tex. R. Evid. 509(e)(4).
7. Brender had previously been appointed guardian ad litem
to represent the interests of Mark and Michael Mills, who have settled and are
no longer parties to this case or original proceeding.
8. Because the patients who received E-Ferol were born no
later than April 1984, all of them would have turned eighteen before May 2002.
9. Because we order the trial court to vacate its October
18, 2002 order, we need not address Cooks's contention that the trial court
abused its discretion because its findings in the order do not support its
conclusion. See Tex. R. App. P. 47.1.