Vertine **JONES**, Jr., et al., Appellants,

v.

C. R. **MARTIN**, Appellee.

No. 8094.

Court of Civil Appeals of Texas, Texarkana.

March 14, 1972.

Rehearing Denied May 16, 1972.

Charles H. Clark, Tyler, for appellants.

Sam B. Hall, Jr., Smith, Hall & Huffman, Marshall, for appellee.

RAY, Justice.

Appellee (Plaintiff) C. R. Martin brought suit in the District Court of Harrison County seeking recovery for his personal injuries and property damages against Jessie D. Jones and Vertine Jones, Jr., Appellants (Defendants). Martin's pickup truck was struck by an automobile owned by Jessie D. Jones and driven by his nephew, Vertine Jones, Jr., as Vertine attempted to cross FM Road No. 31. The collision occurred at the intersection of Airport Road and FM Road No. 31 in Marshall. The Jones vehicle was headed in a westerly direction on Airport Road and had stopped at the stop sign before entering the intersection. Martin's vehicle was traveling in a southeasterly direction at the time of the collision. The jury verdict found Vertine Jones, Jr., guilty of primary negligence in the operation of his vehicle, and the trial court accordingly entered judgment for Appellee Martin in the sum of $16,658.00 and costs. Jessie D. Jones had been dismissed personally as a party defendant at the close of all of the testimony, and was then appointed guardian ad litem for the Appellant, Vertine Jones, Jr., after Appellee's opening argument to the jury. Appellants timely filed their notice of appeal and present five points of error for consideration by this court.

In Appellants' first three points of error they urge that the trial court erred in rendering judgment for Appellee Martin because there was no pleading to support the submission of Special Issue No. 11, Sec. (f); because there was no evidence to support the jury finding; and, because the jury's answer to such special issue was against the great weight and preponderance of the evidence.

The special issue in question was submitted as follows:

"Special Issue No. 11:

"What amount of money, if any, do you find from a preponderance of the evidence, would fairly and reasonably compensate the Plaintiff, C. R. Martin, for the injuries which Mr. Martin sustained in the collision in question?

ANSWER SEPARATELY IN DOLLARS AND CENTS, IF ANY, WITH RESPECT TO EACH OF THE FOLLOWING ELEMENTS:

(f) Any impairment to Mr. Martin's capacity to work and perform services of a monetary value, if any, that he will in reasonable probability sustain in the future as a proximate result of his injuries sustained in said collision.

ANSWER: $9,000.00."

Relative to the adequacy of the Plaintiff's pleadings to sustain the submission of Special Issue 11(f) and to sustain the jury verdict, we are convinced that the pleadings and evidence were adequate. Appellee alleged that "As a proximate result of the said Defendant's negligence the Plaintiff suffered severe, painful and *disabling* injuries." Appellee further alleged that, "He had undergone much physical pain and suffering, as well as mental anguish and loss of earnings and medical expenses past and future which are reasonably necessary, and the damages sustained by the Plaintiff as a proximate result of the collision caused by the Defendant's negligence are believed and alleged to be in the sum of at least $20,000.00, exclusive of the damage to his pickup, interest and court costs." In his prayer, Appellee asked for "the sum of $21,500.00, together with interest thereon at the legal rate from the date of judgment until satisfaction, for all costs of suit and general relief." Appellants did not except to the Plaintiff's pleadings and have not brought forward any complaint about the admission of evidence introduced by Appellee Martin in support of his claim for lost earning capacity. Appellants' objection to Special Issue No. 11(f) is as follows:

"Defendant objects to Special Issue No. 11, Subsection (f) for the reason that there is no proper pleadings (sic) to support the submission of this issue, and for the further reason that the evidence in this case produced by the Plaintiff is directly contrary to what the jury is being asked to speculate, engage in conjecture about; and, for this reason, it is improper to submit this portion of Special Issue No. 11 to the jury."

We do not believe that the quoted objection was sufficiently specific, and was therefore waived. Rule 274, Tex.R.Civ.P.

"An objection to meet the requirements of Rule 274, must be such that the trial court can determine in exactly what manner the charge or instruction needs to be changed." Home Insurance Co. v. Burkhalter, 473 S.W.2d 318 (Tex.Civ.App. Texarkana 1971, no writ). Also, since Appellants had failed to except to Appellee's pleadings, or object to the evidence of impaired earning capacity, Appellants' objection to the charge was untimely. Agnew v. Coleman County Electric Cooperative, Inc., 153 Tex. 587, 272 S.W.2d 877 (1954).

We further believe that the trial court was correct in submitting Special Issue 11 (f) in view of the holding in Cowden Cab Company v. Thomas, 425 S.W.2d 886 (Tex. Civ.App. Fort Worth 1968, writ ref'd, n. r. e.). The court upheld the submission of special issues inquiring as to "loss of past earnings and decrease in future earning capacity" because no exceptions were filed to the Plaintiff's pleadings. There the Plaintiff's petition stated, "Plaintiffs would further show the court and jury that because of the injuries which she has received and the pain and suffering and the mental anguish to which she has been subjected by reason of the injuries received by her, that she has been damaged in the

sum of Fifteen Thousand ($15,000.00) dollars." The prayer for relief included, "For such other and further relief, special and general, in law and in equity, to which they may show themselves justly entitled." In the case before us now, Appellee Martin alleges, "Loss of earnings and medical expenses, past and future, which are reasonably necessary, * * *", and then prays for a judgment of $21,500.00 and "general relief."

The context in which we find Appellants' first point of error is an allegation by Appellee Martin that his injuries were disabling and that he had future loss of earnings. No exception was taken to these pleadings by Appellee. Testimony was introduced without objection relative to the impairment of Appellee's earning capacity. We have held that Appellants' objection to Special Issue No. 11(f) was not sufficient under Rule 274, Tex.R.Civ.P. Under these circumstances, we hold that the trial court properly submitted Special Issue No. 11(f). Appellants' first point of error is overruled.

A reasonable conclusion to be drawn from the testimony would be that Appellee Martin would have future loss of earnings well in excess of $9,000.00, since the medical testimony shows that he is totally and permanently disabled and his testimony shows he was 52 years of age at the time of the collision. The evidence establishes that Martin was making $500.00 per month for his services prior to the collision.

In Greyhound Lines, Inc., v. Craig, 430 S.W.2d 573 (Tex.Civ.App. Houston 14th, 1968, writ ref'd, n. r. e.), the Houston Court of Civil Appeals had occasion to review the relationship between "diminished capacity to work and labor" and "loss of earnings." There the court said,

"This subject has been debated extensively and has resulted in some confusion to trial and appellate courts in Texas. It is true that the amount of earnings

lost in the past or that will probably be lost in the future are evidentiary of diminished earning power, and such specific evidence is admissible on the issue. But 'loss of earnings' or 'loss of time' is of no moment unless each is related to the diminished earning capacity of the injured party. If a plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss can best be shown under the evidence by comparing his actual earnings before and after his injury. McIven v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712. But specific proof of actual earnings and income are evidentiary of the ultimate issue, and the true measure of damages is the diminished earning power or earning capacity of the plaintiff, in the past or in the future, directly resulting from the injuries he sustained in the accident. Dallas Ry. & Terminal Co. v. Guthrie, 146 Tex. 585, 210 S.W.2d 550, 552; Gulf W. T. & P. Ry. Co. v. Abbott, 24 S.W. 299, 300 (Tex.Civ.App.), no writ; McIver v. Gloria, supra, 169 S.W.2d at p. 713; Lockley v. Page, 142 Tex. 594, 180 S.W.2d 616, 618; Green v. Rudsenske, 320 S.W.2d 228, 235–236 (Tex.Civ. App.), no writ. As stated in the latter case, the fact that an employer pays plaintiff's salary after injury on altruistic motives or for earned time is immaterial so far as plaintiff's right to recovery is concerned. We hold that earning power or earning capacity is the ultimate issue, and that the trial court did not err in submitting the damage issues and instructions to the jury."

■ Future loss of earnings is but one evidentiary element to be considered in arriving at the loss of earning capacity. In Texas Electric Ry. v. Worthy, 250 S.W. 710, 712 (Tex.Civ.App. Dallas 1923, writ dism'd), the court stated:

"Earning capacity does not necessarily mean the actual earnings that one who

suffers an injury was making at the time the injuries were sustained. It refers to that which, by virtue of the training, the experience and the business acumen possessed, an individual is capable of earning. He might not actually have been earning anything at the time his earning capacity was impaired. This capacity, whatever it was, defendant in error was entitled to, unimpaired by any injury wrongfully inflicted upon him by another. Manifestly the damage suffered by defendant in error in this respect must be measured by the extent of the impairment of this earning capacity. This, of course, is incapable of any exact computation. Whether an injured party had been working for a salary theretofore, or whether he had been working in his own business, the only basis upon which a jury can determine this loss is from evidence of what use he had theretofore made of his capabilities and opportunities in the way of earning money, and compare it with what use he is capable of making of his impaired powers in this respect after the injury has been received."

In the *Worthy* case, supra, the appellant wanted the trial court to charge the jury that they were not to take into consideration as an element of damages any profits the appellant might have made from the sale of automobiles in his business or by him personally. In overruling this point of error the appellate court stated:

"This evidence, sought to be withdrawn from the jury for the purposes indicated by the [requested] charge, was pertinent upon this issue. It was an element to be considered by the jury in determining what earning capacity defendant in error possessed before the injury, in order that a basis might be had for the measure of its impairment after the injury. A jury of intelligent men could not have understood from the court's charge allowing a finding on the value of defend-

ant in error's diminished capacity to labor and earn money in the future, that this testimony was to be taken as fixing the amount to be allowed him for the impairment of this earning capacity. They were not charged that they would find what profits would be lost to him in the future by reason of his injuries, and they could not have understood that such was the meaning of the charge."

■ We have concluded that Appellants' second and third points of error are without merit, especially in view of the fact that Appellee Martin's future loss of earnings would be well in excess of $9,000.00, when computed at the rate of $500.00 per month over his life expectancy of 19.49 years. Since future loss of earnings is but one of the elements to be considered in arriving at loss of earning capacity, and because the $9,000.00 award is less than the computed total of 19.49 years times loss of earnings at the rate of $6,000.00 per year, we do not believe that the jury was in any manner misled, nor do we find any error in the court's charge. Had the court charged the jury to find the amount that would compensate Appellee for his future loss of earnings, rather than loss of earning capacity, the awarded amount might have been in excess of the $9,000 which the jury awarded for diminished earning capacity. Under the state of the record, we believe that the award for diminished earning capacity was very modest, and certainly less than Appellee's future loss of earnings.

Appellants' Points of Error 4 and 5 question the propriety of the trial court's entering a judgment for Appellee Martin when the guardian ad litem was appointed after opening argument.

The question here presented is new and has not been determined by the courts of this state, insofar as our research has revealed.

The record indicates that Vertine Jones, Jr., was served with citation; that he has lived all of his life with his uncle, Jessie D. Jones, and that Jessie D. Jones was in court with him during the entire trial. The testimony shows that Vertine Jones, Jr., was 18 years of age and was represented by counsel during the entire trial. The record further establishes that no conflict of interest existed between Jessie D. Jones and Appellant Vertine Jones, Jr. After Jessie D. Jones was dismissed individually as a party defendant, he was appointed guardian ad litem for Vertine Jones, Jr., and such appointment was made after opening argument. It can be concluded from the testimony that Jessie D. Jones was the natural guardian of Vertine Jones, Jr. No complaint was ever lodged with the trial court concerning the minority or incapacity of Vertine Jones, Jr., to be sued in this case, nor was his want of capacity to be sued ever raised by a verified defensive pleading as required by Rules 93(b) and 93(e), Tex.R.Civ.P. The trial court discovered that a guardian ad litem had not been appointed after opening argument, and on its own motion appointed Jessie D. Jones as the guardian ad litem. After testimony was taken relative to the appointment, the defense counsel was asked by the court, "Do you have a motion in connection with this testimony?

"Mr. Clark: No, sir. I just wanted that in the record in connection with this point."

No motion for mistrial was made concerning the appointment of Jessie D. Jones as the guardian ad litem, nor was any point made of his qualifications at the time of the appointment. The testimony by Jessie D. Jones establishes that he reared and cared for Vertine Jones, Jr., in his own home and held him out as his son and still holds him out as his son. The record is silent concerning whether Appellant's disabilities of minority have been removed, or whether he is presently married or has ever been married.

Rule 173, Tex.R.Civ.P. provides that,

"When a minor, lunatic, idiot or a non-compos mentis may be a defendant to a suit and has no guardian within this State, or where such person is a party to a suit either as plaintiff, defendant or intervenor and is represented by a next friend or a guardian who appears to the court to have an interest adverse to such minor, lunatic, idiot or non-compos mentis, the court shall appoint a guardian ad litem for such person and shall allow him a reasonable fee for his services to be taxed as a part of the costs."

The El Paso Court of Civil Appeals concluded in the case of In Re Gonzalez, 328 S.W.2d 475, 477 (Tex.Civ.App. El Paso 1959, writ ref'd, n. r. e.) that a guardian ad litem need not be appointed when the parents of the child were present at the hearing and trial, without discussing Rule 173, supra. In a later case, styled Lee v. McKay, 414 S.W.2d 956, 968, (Tex.Civ.App. San Antonio 1967, writ dism'd), Justice Cadena had occasion to review the holding in the Gonzalez case. Both the Gonzalez case and the Lee case involved juvenile proceedings. The conclusion reached by Justice Cadena is that the trial court must appoint a guardian ad litem if the child stands alone before the juvenile court. The inference is left that if the child stands with his parents or some adult appearing to protect the interests of the child, then a guardian ad litem need not be appointed.

Rule 173, supra is not clear in specifying the type of guardian that a minor must have within this state in order to relieve the court of appointing a guardian ad litem. The purpose of the rule is to provide for the protection of the rights of one who is legally a minor. Obviously, if the minor stands alone, it is the duty of the courts to appoint a guardian ad litem to assist the minor in preserving his rights under the law. It is our conclusion, however, that if the minor is being assisted

by one or more natural guardians such as his parents, foster parent or close relative, and the child and natural guardian have no adverse interests, the trial court need not appoint a guardian ad litem for the reason that it will be presumed that those who are closest to the child and have the child's best interests in mind will see that the child's legal rights are protected.

■ Under the facts of the present case, the testimony shows that Jessie D. Jones is the natural guardian of Vertine Jones, Jr., and that he was in the court room with the child during the trial. Jessie D. Jones testified that he was looking after the interests of Vertine Jones, Jr., on the day that the final arguments were being made and that he had been looking after the child's interests all during the trial. In view of the testimony, the fact that the minor had been represented by competent counsel during the entire lawsuit, the failure of Rule 173 to provide the exact time for the appointment of a guardian ad litem, the failure of Vertine Jones, Jr., to show that his rights were in any manner prejudiced by such late appointment or that the trial of the case would have been conducted in any other manner which would have afforded him better protection of his rights, we must therefore conclude that no error resulted in the failure to appoint a guardian ad litem for the minor at the beginning of the trial. It is doubtful, under the circumstances of this case, that the appointment of a guardian ad litem would have been required by Rule 173, supra.

Appellants' points of error 4 and 5 are therefore overruled.

Our examination of the record in this case reveals no reversible error committed by the trial court, and its judgment is therefore affirmed.

Affirmed.

DAVIS, J., not participating.