**BORDEN, INC., Appellant,**

v.

**Sergio MARTINEZ, Alvino Morales, and Arnulfo Gonzalez, Jr.,[1] Appellees.**

No. 04–99–00204–CV.

Court of Appeals of Texas, San Antonio.

March 22, 2000.

---

1. Plaintiff in the case below, Rudy Riojas, is     not a party to this appeal.

Edward C. Mainz, Jr., Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, for appellant.

Eduardo Jaime, Oscar A. Vela, Jr., Alvino Ben Morales, Arnulfo Gonzalez, Jr., Law Offices of Arnulfo Gonzalez, Laredo, Michael G. Terry, Edwards, Perry & Haas, L.L.P., Corpus Christi, Sergio Keko Martinez, Lardo, for appellee.

Sitting: TOM RICKHOFF, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

Opinion by: CATHERINE STONE, Justice.

This limited appeal concerns the propriety of the trial court's award of guardian ad litem fees in an underlying personal injury case. On multiple grounds, Borden challenges the reasonableness of the award. In the absence of evidence to show the trial court abused its discretion, we affirm the judgment of the trial court.

### Factual and Procedural Background

In 1996, a milk truck which displayed Borden's logo, crossed over the center line on a wet highway and collided with a truck driven by Victor Manuel Casares Hernandez. Hernandez, along with his two passengers, Maria Hortencia Rivera Riojas and Maribel Salinas Martinez, sustained fatal injuries. On September 27, 1996, twenty-one claimants, including eleven minors, filed a wrongful death and survival action against Borden for the triple fatality. On September 19, 1997, the trial court appointed three guardians ad litem to represent the interests of the minors. The court appointed Sergio Martinez as ad litem for the two Hernandez minors, Alvino Morales for the five Martinez minors, and Arnulfo Gonzalez for the five Riojas minors. The parties reached a settlement in the amount of $7.5 million on June 19, 1998. Following an evidentiary hearing on the issue of guardian ad litem fees, the trial court allocated $200,000 to the three guardians ad litem as follows: $45,000 to Martinez, $75,000 to Morales, and $80,000 to Gonzales. The trial court awarded all three guardians ad litem additional fees for any subsequent appeals. Borden does not contest the appellate fees, but challenges the fees awarded for services rendered up to the settlement.

### Standard of Review

We review the award of guardian ad litem fees under an abuse of discretion standard. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex.1999). The amount of an ad litem award is in the trial court's sound discretion, and will not be set aside absent evidence of the trial court's clear abuse of discretion. *Id.* A trial court abuses its discretion if there is no evidence or insufficient evidence to support the award. *Dalworth Trucking Co. v. Bulen*, 924 S.W.2d 728, 738 (Tex.App.-Texarkana 1996, no writ). The reviewing court may draw upon the common knowledge of the justices and their experience as lawyers and judges to view the matter in light of the evidence and the amount in controversy. *Id.* A trial court does not necessarily abuse its discretion in awarding fees to a court-appointed guardian ad litem if under the same facts, an appellate judge would decide the matter differently, or if the trial court commits a mere error in judgment. *Valley Coca–Cola Bottling Co., Inc. v. Molina*, 818 S.W.2d 146, 148 (Tex.App.-Corpus Christi 1991, writ denied).

### Discussion

Rule 173 of the Texas Rules of Civil Procedure governs guardian ad litem appointments. Rule 173 permits a trial court to appoint a guardian ad litem when a minor is represented by a guardian or next friend who appears to have an interest adverse to that of the minor. Tex.R.Civ. P. 173. Guardians ad litem are entitled to a reasonable fee for their services to be taxed as a part of the costs. Tex.R. Civ. P. 173.

Courts use the same eight factors to determine the reasonableness of attorney's fees to ascertain the appropriate guardian ad litem fee. *Garcia*, 988 S.W.2d at 222. The eight factors are:

- the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
- the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
- the fee customarily charged in the locality for similar legal services;
- the amount involved and the results obtained;
- the time limitations imposed by the client or by the circumstances;
- the nature and length of the professional relationship with the client;
- the experience, reputation, and ability of the lawyer or lawyers performing the services; and
- whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.; see Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 794 (Tex.1987); *Missouri Pac. R.R. Co. v. Alderete*, 945 S.W.2d 148, 150 (Tex.App.-San Antonio 1996, no writ).

### Sergio Martinez

The trial court awarded Martinez $45,000 in ad litem fees for 114 hours spent in the representation of the two Hernandez claimants (approximately $394.74/hr). Raising two primary complaints, Borden argues first, that the trial court erred in awarding fees for time Martinez spent on Norma Hernandez's case after she attained majority, and second, that the trial court erred .in appointing Martinez guardian ad litem for Victor Hernandez, Jr.

We review Borden's complaints in terms of conflict of interest. Where a next friend exhibits adverse interests to the minor, a court must appoint a guardian ad litem under Texas Rule of Civil Procedure 173. *Hall v. Birchfield*, 718 S.W.2d 313, 319 (Tex.App.-Texarkana 1986), *rev'd on other grounds*, 747 S.W.2d 361, 364 (Tex.1987). The determination of the existence of a conflict of interest requires exercise of judicial discretion. *Gibson v. Blanton*, 483 S.W.2d 372, 373 (Tex.Civ. App.-Houston [1st Dist.] 1972, no writ). When the natural parents are parties to the suit, a judge may exercise judicial discretion if the judge believes that a potential conflict exists and could arise during a negotiation of settlement or prosecution of the suit, and the ad litem costs can be taxed against the defendants. *Coleman v. Donaho*, 559 S.W.2d 860, 864 (Tex.Civ. App.-Houston [14th Dist.] 1977, writ dism'd). When the conflict of interest between the minor and the next friend ceases, the trial court should remove the guardian ad litem. *Brownsville–Valley Reg. Med. Ctr. v. Gamez*, 894 S.W.2d 753, 755 (Tex.1995); *Estate of Catlin v. General Motors Corp.*, 936 S.W.2d 447, 452 (Tex. App.—Houston [14th Dist] 1996, no writ); *Rio Grande Valley Gas Co. v. Lopez*, 907 S.W.2d 622, 625 (Tex.App.—Corpus Christi 1995, no writ).

Here, Borden argues that any conflict between Norma Hernandez and the surviving spouse ceased when Norma attained majority. Counsel for the Hernandez plaintiffs provided full representation on Norma's behalf. As such, Borden contends Martinez's continued representation and fee award was improper. With regard to Victor Hernandez, Jr., Borden similarly argues that no conflict of interest existed to justify Martinez's appointment and subsequent fee award. Shortly after the suit was filed, the parties discovered that Victor Jr., was Victor Hernandez's son out of wedlock. Borden asserts the trial court erred in making a needless ad litem appointment because Victor Jr. was ably represented by an attorney, his mother had no standing to sue as either a common law or legal spouse, and thus no ·conflict of

interest arose. *See Leigh v. Bishop*, 678 S.W.2d 572, 573 (Tex.App.-Houston [14th Dist.] 1984, no writ)(holding the trial court abused its discretion in appointing a guardian ad litem where father requested that entire settlement award be placed in the court registry for son's benefit, appointment accrued unnecessary attorney's fees, and minor lost interest on potential settlement monies); *Jones v. Martin*, 481 S.W.2d 467, 472 (Tex.Civ.App.-Texarkana 1972, no writ)(dispensing with guardian ad litem appointment where natural parent exhibited no adverse interests to those of the child).

Despite Borden's complaint on appeal, the record shows that no efforts were made by Borden to remove Martinez as guardian ad litem for either Norma Hernandez or Victor Jr. *See generally Coleson v. Bethan*, 931 S.W.2d 706, 711–12 (Tex. App.-Fort Worth 1996, no writ)(outlining procedures for removal of guardian ad litem); *Jones*, 481 S.W.2d at 472 (recognizing that in the absence of any motion for mistrial or objections to qualifications, guardian ad litem appointment was proper). Borden never cross-examined Martinez on these issues at the evidentiary hearing on the issue of fees. As such, the trial court considered the evidence Martinez presented based upon the *Garcia* reasonableness factors. Specifically, Martinez pointed to agency and respondeat superior issues concerning the imposition of liability on Borden, which hired the independent contractor that collided with the decedents' truck. Martinez further argued that disputes over insurance issues arose between the independent contractor and Borden's carriers, and these disputes, coupled with new attorneys, made settlement difficult. Martinez maintained that even after the tender of settlement monies by Borden, problems persisted with distribution among the minors. He asserted that disputes arose among the ad litems themselves as to an equitable allocation of the money. He discussed the problems which arose in creating a trust which was acceptable to all parties involved. Martinez testified at the evidentiary hearing that as a practicing lawyer for seventeen years, his basic hourly rate ranged from $200–$350 per hour. He further testified that time spent at depositions, hearings, and mediations in the instant case precluded him from expending efforts in his criminal law practice.

In light of the evidence the trial court considered, we cannot hold that the trial court's award constituted an abuse of discretion. Although a trial court does not have unbridled discretion in awarding attorney's fees, Martinez maintained a combined billing statement for both Norma and Victor Jr., precluding the trial court from segregating any specific fees. As such, it is reasonable that the trial court considered past time spent on Norma's case prior to her attaining majority in making its fee determination. In any event, no abuse of discretion exists where Borden failed to alert the trial court to any objection to Martinez's continued representation or to request his removal.

### Alvino Morales

■ The trial court awarded Morales $75,000 ($579.15/hr) for 129.5 hours of service as ad litem fees for the five Martinez minors.

Borden's arguments as to Morales' award do not differ significantly from those Borden raises with regard to Martinez. These two attorneys shared offices and Borden contends that their services as guardians ad litem paralleled one another. Borden objects to the number of hours Morales spent in preparation for the evidentiary hearing to defend his ad litem award. Borden relies on a number of cases which reduced ad litem fees where the record failed to support the award. *See Simon*, 739 S.W.2d at 794; *Gamez*, 894 S.W.2d at 754–57; *Dalworth Trucking Co.*, 924 S.W.2d at 731.

Guided once again by an abuse of discretion, we decline to engage in second-guessing the trial court's review of the hours Morales spent reviewing documents and

preparing for the evidentiary hearing. *See Molina,* 818 S.W.2d at 148 (recognizing that no abuse of discretion exists where appellate judge would decide a matter differently). Further, we recognize that with the appointment of the guardian ad litem role comes extended exposure to liability. A guardian ad litem stands in a precarious position as the statute of limitations for malpractice actions is tolled until the minor attains majority plus any applicable limitations period thereafter. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.001 (Vernon 1986) (tolling limitations for causes of action brought by minors); *Alderete,* 945 S.W.2d at 150; *Byrd v. Woodruff,* 891 S.W.2d 689, 695 (Tex.App.-Dallas 1994, writ dism'd by agr.)(imposing liability for negligence on guardian ad litem in suit brought by minor). We acknowledge the trial court's reliance on the *Garcia* fee factors during the evidentiary hearing. Morales introduced evidence of tailored trust provisions (higher education incentives, jurisdictional issues, and investment provisions) which he took an active role in securing, as additional grounds for finding that his fee was reasonable. The record recites the court's attention to the legal complexities in the case, most notably the changing law in independent contractor liability, conflicts among insurance carriers, and coverage disputes. Finally, as noted by Martinez, no efforts were made to remove Morales in his role as guardian ad litem. Accordingly, we cannot hold the trial court abused its discretion in awarding Morales' fees.

### *Arnulfo Gonzalez, Jr.*

■ The trial court awarded Gonzalez $80,000 in ad litem fees ($358/hr) for 222.95 hours of service for the five minors related to the Riojas decedent.

Borden conceded both in its brief and during oral argument that Gonzalez took a significant role as spokesperson for the guardians ad litem in the lawsuit. However, Borden objects to the fee award on the grounds that it is unreasonable and excessive. Borden argues the vast bulk of

hours were spent in preparation for the evidentiary fee hearing. Further, Borden notes Gonzalez only actually prepared two documents—the rest he merely reviewed. Borden challenges specific billing entries, contending, for example, that twelve minutes to review a six-line order of appointment constitutes excessive billing.

■ We decline to second-guess the trial court's review of the details of Gonzalez's billing statement to find an abuse of discretion. *See Molina,* 818 S.W.2d at 148. At the hearing, Gonzalez argued that he took the lead role in arriving at an acceptable settlement formula for all the plaintiffs and he curtailed a substantial amount of legal work to attend to the instant case. Gonzalez also pointed out Borden's failure to cross-examine him on the reasonableness of his fee at the hearing. The record reveals that the trial court considered testimony from two practicing attorneys in Webb County who testified that the fee charged for the work rendered by all three guardians ad litem was reasonable for the complexity of the case. We note that an attorney's degree of experience and reputation are significant components in determining the reasonableness of a fee. *Garcia,* 988 S.W.2d at 222. In light of the affirmative evidence regarding the *Garcia* factors, and in the absence of any cross-examination into the *Garcia* factors by Borden, we cannot find that the trial court abused its discretion in awarding Gonzalez's fee.

### MOTION FOR NEW TRIAL

■ Borden argues the trial court abused its discretion in overruling its motion for new trial on the issue of ad litem fees. The granting or denial of a motion for new trial is within the trial court's sound discretion and will not be disturbed on appeal in the absence of an abuse of discretion. *Strackbein v. Prewitt,* 671 S.W.2d 37, 39 (Tex.1984). Because we hold that no abuse of discretion occurred in the trial court's award, we further hold that no abuse of discretion occurred in

overruling Borden's motion for new trial on this issue.

We affirm the trial court's judgment.

Concurring opinion by: TOM RICKHOFF, Justice.

Dissenting opinion by: PAUL W. GREEN, Justice.

TOM RICKHOFF, Justice, concurring.

"The award of $200,000 in guardian-ad-litem fees for a $7.5 million case is a good ole boy windfall for the trial court's pet lawyers." That is the basic contention of the appellant in this case. If the guardians ad litem here had followed their classic duty of simply reviewing a settlement agreed to by the plaintiff and defendant and declaring to the court that it was acceptable, this contention might have merit. But appellant failed to object that the guardians ad litem exceeded their authority and failed to make a record demonstrating the resulting fee was excessive. It is my belief that in personal injury cases confining the guardian ad litem to the limited role of approving a settlement is unrealistic. It is the appellant's burden to demonstrate an abuse of discretion and, as a former trial judge, I consider that to be a serious burden. Now a few additional words about guardians ad litem.

In Texas, trial judges have little law to guide them in appointing and compensating guardians ad litem. *See, e.g.,* TEX.R. CIV. P. 173; *Garcia v. Martinez,* 988 S.W.2d 219 (Tex.1999); *see also* Jennifer L. Anton, Comment, *The Ambiguous Role and Responsibilities of a Guardian Ad Litem in Texas in Personal Injury Litigation,* 51 SMU L.REV. 161, 162 (1997). I know this from my decade-long experience as a judge of a court that gave preference

to cases brought under Titles II and III of the Family Code. Since I appointed separate guardians ad litem for each parent and the child in every dependent and neglect case, I probably supervised the appointment of more guardians ad litem than any other judge in the state. In my court, the recommendations of a guardian ad litem tragically sometimes had life or death consequences. Personal injury cases are quite different; generally, the recommendations of the guardian ad litem can have only financial consequences for the minors involved. But money, properly directed, can change dramatically a child's life and possibly generations to follow.

Because the recommendations have life-altering implications, a judge relies largely on trust in deciding whom to appoint as a guardian; could I, as the decision-maker, trust the guardian to contribute to a consensus finding that would be in the minor's best interest? Because trial judges have been allowed complete discretion regarding whom to appoint as a guardian ad litem and no mandatory list of qualifications has been promulgated, each trial judge is left to his or her own judgment in deciding whom to appoint. *See* Anton, *supra* at 170.[1] I only appointed guardians who had attended our court's continuing legal education program for guardians, which was conducted by court staff, the Department of Human Services, and CASA. Other judges have admirably adopted their own standardized requirements for guardians. *See, e.g., id.* at 170–71 (describing the requirements developed by Judge Bill Rhea of the 162nd Judicial District Court). But all judges who must utilize guardians ad litem come to know the lawyers practicing in their courts and even if they are motivated to reward

---

1. On appeal, we should presume that each trial judge responds to this serious responsibility by tailoring each appointment so that the skills needed for each case are present. Here the record presents a need for a personal injury trial lawyer with the ability to recognize that the question of duty now comes under close judicial scrutiny in independent

contractor cases. *See, e.g., Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523 (Tex.1997). In my view, this new emphasis has resulted in many more favorable trial verdicts that are lost on appeal. This case demanded a very sophisticated appreciation of current trends in tort law.

friends one can conclude they pick friends they trust.

When it comes to deciding how much guardians ad litem should be paid for their services, trial judges have been given only slightly more guidance than they have been given in deciding whom to appoint. *See, e.g.*, TEX.R. CIV. P. 173; *Garcia*, 988 S.W.2d at 222. Lawyers possessing great and rare experience cannot be found cheaply. Compensation should be based on the role guardians ad litem actually play in the process. Although that role has been frequently and simplistically defined as ascertaining and advocating for the best interest of the minor, the exact nature of the guardian's role is subject to considerable debate. *See* Charles T. Cromley, Jr., Comment, *"[A]s Guardian Ad Litem I'm in a Rather Difficult Position."*, 24 OHIO N.U. L.REV. 567, 567–68 (1998).

In Texas, trial judges and guardians have been instructed that the guardian must "participate in the case *to the extent necessary to protect the minor,"* American Gen. Fire & Cas. Co. v. Vandewater*, 907 S.W.2d 491, 493 n. 2 (Tex.1995) (emphasis added), and that "the guardian ad litem should be allowed considerable latitude in determining what ... activities are necessary to that effort," *Roark v. Mother Frances Hosp.*, 862 S.W.2d 643, 647 (Tex. App.—Tyler 1993, writ denied). But they are also told that "[a] guardian ad litem who goes beyond his role and assumes the duties of plaintiff's attorney is not entitled to compensation for work done assisting or acting for plaintiff's counsel." *Roark*, 862 S.W.2d at 647. Although not entitled to compensation for performing the work of an attorney, the guardian is nevertheless exhorted to perform duties typically performed by attorneys—*e.g.*, conducting a thorough investigation into the facts of the case, contacting counsel, determining the law pertinent to the case, and reviewing

the settlement. *See* Anton, *supra* at 172–73.[2] Mr. Gonzalez testified that at one point, considering the addition of new lawyers, his skills as a mediator were necessary. Appellant acknowledged the positive contribution that resulted. If these efforts were determinative to whether a settlement resulted, his wards may have received nothing at all but for these efforts. And again, while a "guardian ad litem is not an attorney for the child but an officer appointed by the court to assist in properly protecting the child's interests," *Vandewater*, 907 S.W.2d at 493 n. 2, a guardian may be held liable to the minor for negligently performing the duties described above, *see Byrd v. Woodruff*, 891 S.W.2d 689, 708 (Tex.App.—Dallas 1994, writ dism'd by agr.).

What, then, is the guardian ad litem to do? Commentators have noted that the distinction between an attorney and a guardian ad litem is frequently misunderstood or ignored. *See, e.g.*, Anton, *supra* at 167–68, 189–90. This is because the distinction has no real meaning in the parties' minds, or often, in the guardians' minds. A guardian ad litem displaces the minor's next friend (typically the minor's parents), becoming the minor's personal representative. *See Byrd*, 891 S.W.2d at 705. As such, most guardians attempt to secure the best possible results for their wards—just as the minors or their parents would themselves if they were not disqualified by age and conflict of interest. This can be an exceedingly difficult task when there is more money on the table than many of the litigants ever contemplated.

There is evidence that the guardians ad litem in this case attempted to secure the best possible results for their wards. They expended considerable time and labor, foregoing other employment. There is also evidence that the legal issues involved were complex and unsettled. The guardians testified about the steps they

---

**2.** This article includes a useful checklist to guide guardians ad litem in performing their

duties. *See* Anton, *supra* at 192–93.

took to ensure that there was a favorable settlement for their wards and to ensure that the settlement was paid out in a way most beneficial to the wards. Although there is evidence that the guardians understood the distinction between serving as an attorney and as a guardian ad litem, they did not hesitate to take the actions they believed were necessary for the best interest of their wards. While some of their actions might be characterized as fitting in the category of attorney or mediator functions, as opposed to guardian functions, "[t]he trial judge is in a better position than an appellate court to determine where the role of an ad litem ends and that of plaintiff's counsel begins." *Roark*, 862 S.W.2d at 647.

It is only logical for each trial judge to select and trust in a personal injury case highly competent trial lawyers. Once these lawyers are in the mix it is unreasonable not to expect them to utilize their hard-earned skills even if it requires them to cross beyond the classic role of guardian ad litem, and when they do, in my judgment they should be compensated.

I concur in the majority opinion.

PAUL W. GREEN, Justice, dissenting.

Although a trial court has a great deal of discretion in awarding fees to a guardian ad litem, that does not mean unbounded discretion. There is a reasonableness limit. Because the majority apparently places no bounds on a trial court's discretion to award guardian ad litem fees, I must respectfully dissent.

A guardian ad litem is entitled to a reasonable fee for his services. *See* Tex.R. Civ. P. 173.; *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex.1999). The fee amount should be determined by following the same factors used in determining the reasonableness of an attorney's fee award. *See id.* When applying the standard factors in this case, it is clear, at least to me, that the guardian ad litem fees awarded are unreasonable and excessive. Moreover, the time recorded by the lawyers, in some instances, was for services unrelated to or beyond the proper performance of a guardian ad litem's legal obligations.

A guardian ad litem's sole duty is to act as the personal representative of the minor and protect the minor's interests in a lawsuit in which the minor is a party. *See American Gen. Fire & Cas. Co. v. Vandewater*, 907 S.W.2d 491, 493 n. 2 (Tex.1995). I believe the value of that duty is reasonably compensated at the rate of $150 per hour. *See Missouri Pac. R.R. Co. v. Alderete*, 945 S.W.2d 148, 151–52 (Tex.App.-San Antonio 1996, no writ)(Green, J., concurring and dissenting). Thus, I would hold that the trial court abused its discretion when it awarded ad litem fees in amounts that calculate to hourly rates of $358, $395 and $579. I would also exclude from consideration any time spent that was not properly within the legal responsibilities of the ad litem. *See Roark v. Mother Frances Hosp.*, 862 S.W.2d 643, 647 (Tex.App.-Tyler 1993, writ denied) (guardian ad litem who exceeds proper responsibilities not entitled to compensation for extra work).