**McALLEN MEDICAL CENTER and Lolita G. Renolla, Appellant,**

v.

**John A. RIVERA, Guardian Ad Litem for William Gracia, a Minor, and Leticia Gracia, Individually and as Next Friend of William Gracia, a Minor, Appellee.**

No. 13–01–00047–CV.

Court of Appeals of Texas, Corpus Christi-Edinburg.

Aug. 30, 2002.

Ferriel C. Hamby, Jr., Roger W. Hughes, Scott Clark, Adams & Graham, Harlingen, for appellants.

John A. Rivera, Law Office of John A. Rivera, Edinburg, Rolando Garza, McAllen, Veronica Farias, Brownsville, for appellees.

Before Chief Justice VALDEZ and Justices HINOJOSA and CASTILLO.

## OPINION

Opinion by Justice CASTILLO.

Appellants, McAllen Medical Center and Lolita G. Renolla, R.N., appeal the trial court's action appointing a guardian ad litem in a settlement case and the award of fees to the guardian ad litem in the final judgment.[1] We reverse the judgment for fees awarded, modify the judgment to vacate such fees, and as modified, affirm.

### Factual Summary

On March 31, 1997, William Gracia ("William"), a minor, underwent surgery to correct a cleft palate. On April 4, 1997, he was admitted to McAllen Medical Center due to bleeding in his mouth associated with the surgery. While William was in the hospital under its care, the cleft palate ruptured.

Leticia Gracia ("Leticia"), individually and as next friend of her minor son William, sued McAllen Medical Center and

---

1. The appellee in this case is John A. Rivera, guardian ad litem for William Gracia, a minor.

Lolita G. Renolla, R.N. ("Renolla"), for alleged medical negligence that caused the rupture. Leticia claimed that Renolla caused the rupture by applying pressure with an object in William's mouth to stop the bleeding, rather than contacting the surgical physician who had performed the initial cleft palate surgery. Damages claimed included compensatory damages for William and mental anguish damages for Leticia.

In July of 2000, Leticia agreed to a tentative $115,000 settlement with appellants, with all of the money going to William and none to Leticia. In that tentative settlement, 40% ($46,000) was to go to the Gracias' attorneys. The trial judge, however, informed the parties by letter dated July 12, 2000, that he refused to approve the settlement without the appointment of a guardian ad litem. On July 18, the parties filed a "Rule 11 Agreement"[2] in which the parties entered their agreement to the settlement. In this agreement, appellants agreed to pay reasonable court costs, but reserved their right to appeal the appointment of a guardian ad litem.

On August 16, 2000, Leticia requested the appointment of a guardian ad litem. The trial judge appointed John A. Rivera ("Rivera") as guardian ad litem for William on August 23, 2000.

On October 3rd and 4th of 2000, the trial court held a hearing on the proposed settlement agreement of $115,000. Rivera testified that he had reviewed the proposed settlement and agreed that it was in the best interest of the child, because there was a good chance that the Gracias might lose at trial. The court signed an order approving the settlement, and in addition awarded Rivera attorney's fees in the amount of $12,500.[3] Appellants moved for new trial, which was denied by operation of law,[4] and timely filed a notice of appeal. In their sole issue presented, appellants claim that the trial court abused its discretion in appointing Rivera as guardian ad litem, based on a lack of adverse interests between Leticia Gracia and her minor son.

**Jurisdiction**

As a preliminary issue, we will address whether we have jurisdiction to hear this appeal.

Rivera claims that appellants failed to preserve error by not raising a specific and timely objection to the ap-

2. Tex.R. Civ. P. 11.

3. Rivera testified that he spent 80 to 90 hours reviewing the depositions and meeting with the family, in the course of his duties as guardian ad litem.

4. A docket entry in the clerk's record indicates that the motion for new trial was denied on December 13, 2000. The supplemental reporter's record in this case also indicates that there was a hearing on the motion on December 13, 2000, and at the conclusion of that hearing, the trial court orally denied the motion for new trial. However, no signed order denying the motion for new trial appears in the record. It is well-established that a docket entry may not substitute as an order. *In re Fuentes*, 960 S.W.2d 261, 264 (Tex.App.-Corpus Christi 1997, orig. proceed-

ing). Nor was the oral pronouncement sufficient to comply with the requirement for a written order. *Clark & Co. v. Giles*, 639 S.W.2d 449, 450 (Tex.1982); *Reese v. Piperi*, 534 S.W.2d 329, 330–31 (Tex.1976). Accordingly, there was no order entered as to the motion for new trial in the instant case. Where no order is signed on a motion for new trial within 75 days after the judgment was signed, the motion for new trial is overruled by operation of law. Tex.R. Civ. P. 329b(c). Accordingly, in the present case, although the trial court apparently denied the motion orally, and made a docket notation to that effect, the motion was not actually overruled until it was overruled by operation of law, 75 days after the signing of judgment. *Id.*; *Giles*, 639 S.W.2d at 450.

pointment of the guardian ad litem until the motion for new trial.[5] However, Rivera fails to provide any case law on this point. On the contrary, under rule of appellate procedure 33.1(b), in a civil case, the overruling of a motion for new trial by operation of law preserves for appellate review any complaint properly made in that motion for new trial, unless the taking of evidence was necessary to present the complaint to the trial court. Tex.R.App. P. 33.1(b); *Elite Towing, Inc. v. LSI Fin. Group*, 985 S.W.2d 635, 644 (Tex.App.-Austin 1999, no pet.). No taking of evidence was required to present appellants' motion to the trial court.[6] *See* Tex.R. Civ. P. 324(b)(1)(complaints on which evidence must be heard include jury misconduct, newly discovered evidence, and failure to set aside a default judgment); *In re Parker*, 20 S.W.3d 812, 816 (Tex.App.-Texarkana 2000, no pet.)(where there was evidence on the face of the record as to complaint raised in motion for new trial, the taking of evidence was not necessary to present complaint and it was preserved under rule 33.1(b) when motion overruled by operation of law).

Rivera also argues that appellants' failure to secure a written ruling on its motion for new trial meant that the motion for new trial did not preserve the issue presented, referring us generally to *Clark & Co. v. Giles*, 639 S.W.2d 449 (Tex.1982) as authority for his assertion. We disagree.

*Giles*, in fact, supports the appellants' position, as the supreme court therein re- affirmed that, without the signing of a written order within the period of time proscribed by the rules, a motion for new trial is automatically overruled by operation of law. *Id.* at 450. In the instant case, no written order was ever signed. Hence, the motion was overruled by operation of law, Tex.R. Civ. P. 329b(c), and the issue automatically preserved. Tex.R.App. P. 33.1(b).

### Standard of Review

■■■ We review the appointment of a guardian ad litem under an abuse of discretion standard. *McGough v. First Ct. App.*, 842 S.W.2d 637, 640 (Tex.1992). In reviewing a trial court decision under an abuse of discretion standard, we must determine whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The exercise of discretion is within the sole province of the trial court, and an appellate court may not substitute its discretion for that of the trial judge. *Johnson v. Fourth Ct. App.*, 700 S.W.2d 916, 918 (Tex. 1985). Rather, an abuse of discretion occurs only when the trial court reaches a decision that is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* at 917.

### Issue Addressed

■■■ Rivera states in his brief that the test for appointment of a guardian ad litem

---

**5.** Both the opposing party and the court were well aware of appellants' specific objections to the appointment of the guardian ad litem at an early date, as they were raised in the Rule 11 agreement. They were also commemorated in the final judgment itself. However no formal ruling, or request for a ruling on these particular objections, appears in the record, aside from that raised in the motion for new trial and overruled by operation of law.

**6.** There was, in fact, a hearing on the motion on December 13, 2000, where no evidence was presented by either party. We note that, prior to the filing of the motion for new trial, the court's record already contained repeated references to Leticia's disclaimer of any settlement proceeds, the asserted basis for the complaint raised in motion for new trial, in the Rule 11 agreement on file, Leticia's disclaimer made under oath at the friendly suit hearing, and in the judgment itself.

is whether such appointment would be in the "best interest of the child." This is incorrect. Rather, the court should look to whether the next friend bringing suit on behalf of the child has interests that may run adverse to that minor plaintiff. TEX.R. CIV. P. 173; *Davenport v. Garcia,* 834 S.W.2d 4, 24 (Tex.1992). A trial court may not appoint a guardian ad litem absent a conflict of interest between the minor and his next friend. *Brownsville–Valley Reg. Med. Ctr. v. Gamez,* 894 S.W.2d 753, 755 (Tex.1995).

However, the conflict need not be actual; potential for conflict during trial or settlement negotiations also authorizes the appointment of a guardian ad litem. *Borden, Inc. v. Martinez,* 19 S.W.3d 469, 472 (Tex. App.-San Antonio 2000, no pet.); *Clark v. McFerrin,* 760 S.W.2d 822, 828 (Tex.App.-Corpus Christi 1988, writ denied). Appellee Rivera relies on the two cases above to support his notion that the appointment of a guardian ad litem was proper based on the potential for conflicts.

We find both cited cases distinguishable. *Borden* involved an appeal of the reasonableness of guardian ad litem fees, specifically contesting the continued representation and awarding of fees to a certain guardian ad litem after one child reached majority and where it was discovered that another child was an out-of-wedlock child and the natural mother had no standing to bring a legal claim on her own.[7] *Borden,* 19 S.W.3d at 473. The focus in *Borden* related to the *removal* of the ad litem. *Id.* The appellate court found that since the defendant had made no efforts to remove the ad litem nor alert the trial court to any objection as to continued representation by the

ad litem as to either child, no abuse of discretion existed in the awarding of the ad litem fees. *Id.*

Likewise, the facts in *Clark* differ sharply from those in the case before us. In *Clark,* the mother of the children, who was acting as their next friend, had claims which she was actively pursuing, separate and distinct from those of her two children.[8] *Clark,* 760 S.W.2d at 828. The reviewing court in *Clark* thus found that a conflict could have arisen during the settlement negotiations, or the prosecution of the suit, and therefore the trial court did not err in appointing a guardian ad litem to oversee the children's interests. *Id.*

▮▮▮▮ In the present case, unlike *Borden,* the trial court was aware of the objection to the appointment of the ad litem, in the Rule 11 agreement, at the time of the friendly suit, and with the filing of the motion for new trial. Similarly, unlike *Clark,* at the time of the appointment of the guardian ad litem, Leticia had no potential interest adverse to William as the appointment in the present case was made only after settlement negotiations had been completed and Leticia had specifically disclaimed any and all proceeds from the settlement, in favor of William, in the Rule 11 agreement filed with the court. Such a disclaimer removes the risk of conflict between the next friend and the minor plaintiff and thus forecloses the need for appointment of a guardian ad litem. *See Leigh v. Bishop,* 678 S.W.2d 572, 573 (Tex. App.-Houston [14th Dist.] 1984, no writ). Since Leticia expressly disclaimed any interest in the settlement proceeds, she no

---

7. The child himself was not injured but was a plaintiff in a wrongful death and survival action related to his deceased natural father. His natural mother was neither a legal nor common-law spouse to the child's natural father.

8. After a trial to a jury, the mother and one of the children were awarded damages for their individual claims. The jury awarded no damages to the second child.

longer had any legal interest which could be in conflict with that of her son.[9]  *Id.* Accordingly, it was an abuse of discretion for the trial court to subsequently appoint Rivera as guardian ad litem.[10]

## Conclusion

For the forgoing reasons, we reverse that portion of the judgment awarding guardian ad litem fees and assessing those costs against appellant.  We modify the judgment to vacate such award and, as modified, affirm the judgment of the trial court.

---

9. Indeed, if the trial court had appointed a guardian ad litem prior to such a disclaimer, the trial court would have been required to remove the guardian ad litem once the disclaimer had been made.  *See Brownsville–Valley Reg. Med. Ctr. v. Gamez,* 894 S.W.2d 753, 755 (Tex.1995)(once conflict of interest no longer exists, trial court should remove guardian ad litem).

10. It appears from the record that the judge may have based his appointment of the ad litem in part due to the 40% attorney's fee included in the settlement.  However, there is no evidence that the fee claimed by the Gracias' lawyer created a conflict between Leticia Gracia and her son William.  If an attorney's fee claim automatically generated a conflict of interest, then there would be such a conflict in virtually every case filed on behalf of a minor plaintiff by his or her next friend.

Rivera also argues that "the record [is] clear" that Leticia was seeking an immediate disbursement of funds for the down payment toward a mobile home for William and his family which, appellant suggests, was a positive benefit for Leticia and therefore a conflict

with her son's interest.  Rivera speculates that because of her interest in securing a home, Leticia had cause to seek a rapid settlement for her own benefit rather than looking toward the best interest of her son.  Rivera does not cite us to the portion of the record to which he refers.  However, our own review of the record reveals no evidence of a conflict arising therefrom.  In fact, no evidence of any such intent to secure a home for the family even appears in the record until October 4, 2000, during the friendly suit hearing itself.  Thus this expression of intent in October 2000 to use some of the settlement funds to buy a family home could not then have been the basis for the trial court's determination to appoint a guardian ad litem in August 2000.  In a similar vein, Rivera argues that "in most cases, it would seem prudent to appoint a guardian ad litem to ensure that the next friend is not rushing into a settlement, which could be contrary to a minor's interests, in order to receive ancillary benefits."  Acceptance of this argument would completely eviscerate any limitations placed by the "interest adverse" language of rule 173 as such a "potential conflict" could be honestly argued in any case involving a minor.