NUMBER 13-01-00047-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 



 

MCALLEN MEDICAL CENTER


AND LOLITA G. RENOLLA,                                                    Appellant,

 

                                                   v.

 

JOHN A. RIVERA, GUARDIAN AD LITEM 

FOR WILLIAM GRACIA, A
MINOR, 

AND LETICIA GRACIA,
INDIVIDUALLY 

AND AS NEXT FRIEND OF 

WILLIAM GRACIA, A MINOR,                                                  Appellee.

 



 

                         On appeal from the 92nd District Court

                                  of Hidalgo
County, Texas.

 

 



                                   O P I N I O N

 

         Before Chief Justice Valdez and Justices Hinojosa
and Castillo

                                  Opinion by Justice Castillo

                                                    








Appellants,
McAllen Medical Center and Lolita G. Renolla, R.N., appeal the trial court=s action
appointing a guardian ad litem in a settlement case and the award of fees to
the guardian ad litem in the final judgment.[1]  We reverse the judgment for fees awarded,
modify the judgment to vacate such fees, and as modified, affirm.

Factual Summary

On March 31,
1997, William Gracia (AWilliam@), a minor,
underwent surgery to correct a cleft palate. 
On April 4, 1997, he was admitted to McAllen Medical Center due to
bleeding in his mouth associated with the surgery.  While William was in the hospital under its
care, the cleft palate ruptured.  

Leticia Gracia
(ALeticia@), individually
and as next friend of her minor son William, sued McAllen Medical Center and
Lolita G. Renolla, R.N. (ARenolla@), for alleged
medical negligence that caused the rupture. 
Leticia claimed that Renolla caused the rupture by applying pressure
with an object in William=s mouth to stop
the bleeding, rather than contacting the surgical physician who had performed
the initial cleft palate surgery. 
Damages claimed included compensatory damages for William and mental
anguish damages for Leticia.  








In July of
2000, Leticia agreed to a tentative $115,000 settlement with appellants, with
all of the money going to William and none to Leticia.  In that tentative settlement, 40% ($46,000)
was to go to the Gracias=
attorneys.  The trial judge, however,
informed the parties by letter dated July 12, 2000, that he refused to approve
the settlement without the appointment of a guardian ad litem.  On July 18, the parties filed a ARule 11
Agreement@[2] in which the
parties entered their agreement to the settlement.  In this agreement, appellants agreed to pay
reasonable court costs, but reserved their right to appeal the appointment of a
guardian ad litem.

On August16,
2000, Leticia requested the appointment of a guardian ad litem.  The trial judge appointed John A. Rivera (ARivera@) as guardian
ad litem for William on August 23, 2000. 









On October 3rd
and 4th of 2000, the trial court held a hearing on the proposed settlement
agreement of $115,000.  Rivera testified
that he had reviewed the proposed settlement and agreed that it was in the best
interest of the child, because there was a good chance that the Gracias might
lose at trial.  The court signed an order
approving the settlement, and in addition awarded Rivera attorney=s fees in the
amount of $12,500.[3]  Appellants moved for new trial, which was
denied by operation of law,[4]
and timely filed a notice of appeal.  In
their sole issue presented, appellants 
claim that the trial court abused its discretion in appointing Rivera as
guardian ad litem, based on a lack of adverse interests between Leticia Gracia
and her minor son. 

Jurisdiction

As a
preliminary issue, we will address whether we have jurisdiction to hear this
appeal.  








Rivera claims
that appellants failed to preserve error by not raising a specific and timely
objection to the appointment of the guardian ad litem until the motion for new
trial.[5]  However, Rivera fails to provide any case law
on this point.  On the contrary, under rule
of appellate procedure 33.1(b), in a civil case,  the overruling of a motion for new trial  by operation of law preserves for appellate
review any complaint properly made in that motion for new trial, unless the
taking of evidence was necessary to present the complaint to the trial
court.  Tex.
R. App. P. 33.1(b); Elite Towing, Inc. v. LSI Fin. Group, 985
S.W.2d 635, 644 (Tex. App.BAustin 1999, no
pet.).  No taking of evidence was
required to present appellants= motion to the
trial court.[6]  See Tex.
R. Civ. P. 324(b)(1)(complaints on which evidence must be heard include
jury misconduct, newly discovered evidence, and failure to set aside a default
judgment);  In re Parker, 20
S.W.3d 812, 816 (Tex. App.BTexarkana 2000,
no pet.)(where there was evidence on the face of the record as to complaint
raised in motion for new trial, the taking of evidence was not necessary to
present complaint and it was preserved under rule 33.1(b) when motion overruled
by operation of law).

Rivera also
argues that appellants= failure to secure
a written ruling on its motion for new trial meant that the motion for new
trial did not preserve the issue presented, referring us generally to Clark
& Co. v. Giles, 639 S.W.2d 449 (Tex. 1982) as authority for his
assertion.  We disagree.  

Giles, in fact,
supports the appellants= position, as
the supreme court therein reaffirmed that, without the signing of a written
order within the period of time proscribed by the rules, a motion for new trial
is automatically overruled by operation of law.  Id. at 450.  In the instant case, no written order was
ever signed.  Hence, the motion was
overruled by operation of law, Tex. R.
Civ. P. 329b(c), and the issue 
automatically preserved.  Tex. R. App. P. 33.1(b). 

Standard of
Review








We review the
appointment of a guardian ad litem under an abuse of discretion standard.  McGough v. First Ct. App., 842 S.W.2d
637, 640 (Tex. 1992).  In reviewing a trial
court decision under an abuse of discretion standard, we must determine whether
the trial court acted without reference to any guiding rules or
principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  The exercise of discretion is within the sole
province of the trial court, and an appellate court may not substitute its
discretion for that of the trial judge.  Johnson
v. Fourth Ct. App., 700 S.W.2d 916, 918 (Tex. 1985).  Rather, an abuse of discretion occurs only
when the trial court reaches a decision that is Aso arbitrary and unreasonable as to amount to a
clear and prejudicial error of law.@  Id. at 917.  

Issue Addressed

Rivera states
in his brief that the test for appointment of a guardian ad litem is whether
such appointment would be in the Abest interest
of the child.@  This is incorrect.  Rather, the court should look to whether the
next friend bringing suit on behalf of the child has interests that may run
adverse to that minor plaintiff.  Tex. R. Civ. P. 173; Davenport v.
Garcia, 834 S.W.2d 4, 24 (Tex. 1992).  
A trial court may not appoint a guardian ad litem absent a conflict of
interest between the minor and his next friend. 
Brownsville Valley Reg. Med. Ctr. v. Gamez, 894 S.W.2d 753, 755
(Tex. 1995). 








However, the
conflict need not be actual; potential for conflict during trial or settlement
negotiations also authorizes the appointment of a guardian ad litem.  Borden, Inc. v. Martinez, 19 S.W.3d
469, 472 (Tex. App.BSan Antonio
2000, no pet.); Clark v. McFerrin, 760 S.W.2d 822, 828 (Tex. App.BCorpus Christi
1988, writ denied).  Appellee Rivera
relies on the two cases above to support his notion that the appointment of a
guardian ad litem was proper based on the potential for conflicts. 

We find both
cited cases distinguishable.  Borden
involved an appeal of the reasonableness of guardian ad litem fees,
specifically contesting the continued representation and awarding of fees to a
certain guardian ad litem after one child reached majority and where it was
discovered that another child was an out-of-wedlock child and the natural
mother had no standing to bring a legal claim on her own.[7]
 Borden, 19 S.W.3d at 473.  The focus in Borden related to the removal
of the ad litem.  Id.  The appellate court found that since the
defendant had made no efforts to remove the ad litem nor alert the trial court
to any objection as to continued representation by the ad litem as to either
child,  no abuse of discretion existed in
the awarding of the ad litem fees.  Id.  








Likewise, the
facts in Clark differ sharply from those in the case before us.  In  Clark,
the mother of the children, who was acting as their next friend, had claims
which she was actively pursuing, separate and distinct from those of her two
children.[8]  Clark, 760 S.W.2d at 828.  The reviewing court in Clark thus
found that a conflict could have arisen during the settlement negotiations, or
the prosecution of the suit, and therefore the trial court did not err in
appointing a guardian ad litem to oversee the children=s interests.
 Id.

In the present
case, unlike Borden, the trial court was aware of the objection to the
appointment of the ad litem, in the Rule 11 agreement, at the time of the
friendly suit, and with the filing of the motion for new trial.  Similarly, unlike Clark, at the time
of the appointment of the guardian ad litem, Leticia had no potential interest
adverse to William as the appointment in the present case was made only after
settlement negotiations had been completed and Leticia had specifically
disclaimed any and all proceeds from the settlement, in favor of William, in
the Rule 11 agreement filed with the court. 
Such a disclaimer removes the risk of conflict between the next friend
and the minor plaintiff and thus forecloses the need for appointment of a
guardian ad litem.  See Leigh v.
Bishop, 678 S.W.2d 572, 573 (Tex. App.BHouston [14th
Dist.] 1984, no writ).  Since Leticia
expressly disclaimed any interest in the settlement proceeds, she no longer had
any legal interest which could be in conflict with that of her son.[9]  Id. 
Accordingly, it was an abuse of discretion for the trial court to
subsequently appoint Rivera as guardian ad litem.[10]









Conclusion

For the
forgoing reasons, we reverse that portion of the judgment awarding guardian ad
litem fees and assessing those costs against appellant.  We modify the judgment to vacate such award
and, as modified, affirm the judgment of the trial court.         

 

ERRLINDA CASTILLO,

Justice

 

Publish.

Tex.
R. App. P.
47.3(b).

 

Opinion delivered and
filed

this 30th day of
August, 2002.      











[1]
The appellee in this case is John A. Rivera, guardian ad litem for William
Gracia, a minor.





[2]
Tex. R. Civ. P. 11.





[3]
Rivera testified that he spent 80 to 90 hours reviewing the
depositions and meeting with the family, in the course of his duties as
guardian ad litem.





[4]
A docket entry in the clerk=s
record indicates that the motion for new trial was denied on December 13,
2000.  The supplemental reporter=s
record in this case also indicates that there was a  hearing on the motion on December 13, 2000,
and at the conclusion of that hearing, the trial court orally denied the motion
for new trial.  However, no signed order
denying the motion for new trial appears in the record.  It is well-established that a docket entry may
not substitute as an order.  In re
Fuentes, 960 S.W.2d 261, 264 (Tex. App.BCorpus Christi 1997, orig.
proceeding). 
Nor was the oral pronouncement sufficient to comply with the requirement
for a written order.  Clark & Co.
v. Giles, 639 S.W.2d 449, 450 (Tex. 1982); Reese v. Piperi, 534
S.W.2d 329, 330-31 (Tex. 1976). 
Accordingly, there was no order entered as to the motion for new trial
in the instant case.  Where no order is
signed on a motion for new trial within 75 days after the judgment was signed,
the motion for new trial is overruled by operation of law.  Tex.
R. Civ. P. 329b(c).  Accordingly,
in the present case, although the trial court apparently denied the motion
orally, and made a docket notation to that effect, the motion was not actually
overruled until it was overruled by operation of law, 75 days after the signing
of judgment.  Id.; Giles, 639
S.W.2d at 450.





[5]
Both the opposing party and the court were well aware of appellants=
specific objections to the appointment of the guardian ad litem at an early
date, as they were raised in the Rule 11 agreement.  They were also commemorated in the final
judgment itself.  However no formal ruling,
or request for a ruling on these particular objections, appears in the record,
aside from that raised in the motion for new trial and overruled by operation
of law.





[6]
There was, in fact, a hearing on the motion on December 13, 2000, where no
evidence was presented by either party. 
We note that, prior to the filing of the motion for new trial, the court=s
record already contained repeated references to Leticia=s
disclaimer of any settlement proceeds, the asserted basis for the complaint
raised in motion for new trial, in the Rule 11 agreement on file, Leticia=s
disclaimer made under oath at the friendly suit hearing, and in the judgment
itself.





[7]
The child himself was not injured but was a plaintiff in a wrongful death and
survival action related to his deceased natural father.  His natural mother was neither a legal nor
common-law spouse to the child=s
natural father.





[8]
After a trial to a jury, the mother and one of the children were awarded
damages for their individual claims. The jury awarded no damages to the second
child.





[9]
Indeed, if the trial court had appointed a guardian ad litem prior to such a
disclaimer, the trial court would have been required to remove the guardian ad
litem once the disclaimer had been made. 
See  Brownsville Valley
Reg. Med. Ctr. v. Gamez, 894 S.W.2d 753, 755 (Tex. 1995)(once conflict of
interest no longer exists, trial court should remove guardian ad litem).





[10]
It appears from the record that the judge may have based his appointment of the
ad litem in part due to the 40% attorney=s
fee included in the settlement.  However,
there is no evidence that the fee claimed by the Gracias=
lawyer created a conflict between Leticia Gracia and her son William.  If an attorney=s
fee claim automatically generated a conflict of interest, then there would be
such a conflict in virtually every case filed on behalf of a minor plaintiff by
his or her next friend.  

Rivera also argues that Athe
record [is] clear@ that Leticia
was seeking an immediate disbursement of funds for the down payment toward a
mobile home for William and his family which, appellant suggests, was a
positive benefit for Leticia and therefore a conflict with her son=s
interest.  Rivera speculates that because
of her interest in securing a home, Leticia had cause to seek a rapid
settlement for her own benefit rather than looking toward the best interest of
her son.  Rivera does not cite us to the
portion of the record to which he refers. 
However, our own review of the record reveals no evidence of a conflict
arising therefrom.  In fact, no evidence
of any such intent to secure a home for the family even appears in the record
until October 4, 2000, during the friendly suit hearing  itself. 
Thus this expression of intent in October 2000 to use some of the
settlement funds to buy a family home could not then have been the basis for
the trial court=s determination
to appoint a guardian ad litem in August 2000. 
In a similar vein, Rivera argues that Ain
most cases, it would seem prudent to appoint a guardian ad litem to ensure that
the next friend is not rushing into a settlement, which could be contrary to a
minor=s interests, in
order to receive ancillary benefits.@  Acceptance of this argument would completely
eviscerate any limitations placed by the Ainterest
adverse@ language of
rule 173 as such a Apotential
conflict@ could be
honestly argued in any case involving a minor.